Hon. JOHN S. TENNEY, LL. D.,  }
Hon. SAMUEL WELLS,              } ASSOCIATE JUSTICES.
Hon. JOSEPH HOWARD.             }

---

INHABITANTS OF OLDTOWN *versus* INHABITANTS OF SHAPLIEGH.

Of the extent of the departure from the strict rules of evidence, in the use of unconnected papers and private memoranda of third persons, of an ancient date, to prove the existence of coeval facts.

In order to prove in what town was the residence of a pauper on a particular day, twenty-two years before the trial, a writ drawn and dated on that day, in which he was the plaintiff and his residence was named, was allowed to be read in evidence, although it was never served, and although the attorney who drew it had no knowledge of the residence, except as stated to him by the pauper when it was drawn.

ON EXCEPTIONS from *Nisi Prius*, TENNEY, J. presiding.

The case was tried before the jury in 1850.

ASSUMPSIT to recover for supplies furnished to one Thad-

deus Trafton a pauper, who once had a settlement in Shapleigh.

The defendants contended, that on the 23d of Feb'y, 1828, (the day on which the town of Wellington was incorporated,) the pauper gained a new settlement by residing in that town. The plaintiffs attempted to prove, that the pauper, on that day was not residing in Wellington, but in Brighton.

They called Cleopas Boyd, Esq. an attorney at law, who testified, *that* he made a writ for Trafton on that day, (which was the day of its date;) *that* Trafton indorsed the writ; *that* except what Trafton told him at the time, he had no knowledge where Trafton resided; and *that* the writ was never served. The plaintiffs offered to read the writ, stating that it named the plaintiff therein as of Brighton. To this the defendants objected; but the writ was admitted and read. The Judge submitted the question of settlement to the jury upon all the evidence. The verdict being for the plaintiffs the defendants excepted to the admission of the writ as evidence.

*J. & M. L. Appleton,* for the defendants.

The writ was not admissible. The attorney's testimony gave it no corroboration. He knew nothing of Trafton's residence. It was never served, and therefore had no characteristics even of a *quasi* record.

It could not have been evidence between the parties; how then *inter alios?* Trafton's declaration of his residence was of no more force than his declaration upon any other subject. If he had made it in writing, it could not be evidence. He was competent as a witness in this trial. How could his mere declarations be proof of any thing? The writ was not sworn to; it testifies nothing; it cannot be cross-examined. What potency is there in an old unserved writ, more than in an old dunning letter. Upon the established rules of evidence, the rights of the people are too vitally involved, to be frittered away by the appearance of an old writ which was never served, and perhaps never served for the fear that its falsities would defeat it.

*Cutting* and *J. H. Hilliard,* for the plaintiffs.

TENNEY, J. —In attempting to ascertain the truth of facts, as they existed a long time ago, courts have varied from the strict rules of evidence, because of the difficulty or impossibility by lapse of time, of proving those facts by living witnesses. They have on this account received the declarations of deceased members of the family, in questions touching pedigree; also monumental inscriptions and entries made in family bibles. " The like evidence has been admitted, in other cases, where the Court were satisfied, that the person, whose written entry or hearsay, was offered in evidence, had no interest in falsifying the fact." *Hingham* v. *Rigdway*, 10 East. 109.

" A minute in writing made at the time when the fact it records took place, by a person since deceased, in the ordinary course of his business, corroborated by other circumstances, which render it probable that the fact occurred, is admissible in evidence." And such a minute is competent, " where it is one of a chain or combination of facts, and the proof of one raises a presumption, that another has taken place." These rules were laid down in *Patteshall* v. *Turford*, 3 Barn. and Adol. 890, and adopted in this State, in *Augusta* v. *Windsor*, 19 Maine, 317.

Certain things stated in deeds, wills and other solemn instruments in writing have been received as competent evidence, although the same facts in verbal declarations are inadmissible. In the case of *Bridgewater* v. *West Bridgewater*, 7 Pick. 191, which was an action to recover for supplies for the relief of a pauper, it became important to prove in what part of the town of old Bridgewater, one James Keith, the ancestor of the pauper, resided ; and on this question, an extract from the records of the old town, purporting to contain a grant of certain lands, described by monuments, and a dwellinghouse thereon, from the town to James Keith, in consideration of his settling among them as a minister of the gospel, was offered. Other votes and acts of the town were offered, showing that he was recognized as their minister. Also his last will, duly approved, by which he devised to his five sons " his homestead," and the deed of the five sons, conveying the lands devised to them, de-

scribing them by monuments mentioned in the original grant of the town. And the plaintiffs offered to prove by deeds and words of the *mesne* conveyances, from that time to the present, and by witnesses, who knew the monuments, that the lands granted to the ancestor of the pauper, were in the territory of West Bridgewater. The Court say, " it (the evidence referred to,) is not objectionable as parol evidence, for it consists in records and deeds, except so much of it as goes to prove the actual situation of the lands as described in those documents."

In a question of the settlement of a pauper, between the towns of Ward and Oxford, 8 Pick. 496, the registry copy of a deed of land executed by the grandfather of the pauper, in which he was described as being in Oxford ; and a copy of his last will, in which he was described " as now resident in Oxford," was admitted as evidence. The Court held such as a very different species of proof, from the mere verbal declarations of a pauper as to his residence ; and that the designation of his residence in a solemn instrument, such as a deed or will, is in the nature of a fact, rather than a declaration, being made when there was no controversy, and when no possible interest could exist, to give a false designation.

In *West Boylston* v. *Stirling*, 17 Pick. 126, the plaintiffs offered evidence tending to show that the pauper for a time resided and had his home in Holden, and introduced written notifications signed by Jervis Abbott, an inhabitant of Holden, addressed to the pauper, warning him to attend district school meetings in Holden, which notifications Abbott testified he delivered to the pauper. The Court say, " the question of domicil is often a difficult one, depending upon many circumstances, some of which of themselves are very slight. We believe, that the fact, that one's name has been placed on the list of voters, has been admitted for this purpose, although it is the act of other persons. The evidence in question is similar ; it is an act of the officers of the town, recognizing the individual as an inhabitant, and acting towards him and with him as such."

In the three cases cited from Massachusetts the evidence was held competent, on the ground that the statements in the instruments were facts existing at the time, and made, when the party making them could have been under no inducement, that can be perceived, to represent them differently from what truth would require. The death of those who made the statements is not treated as giving to the instruments a character, which could alone render them competent. Neither were the documents held admissible, on account of their being records in the strict sense of the term. Deeds and wills, by being recorded, for such purposes as they were allowed to be introduced in the cases referred to, had no higher character as evidence, than the same would have, unrecorded. The fact of a residence of the grantor or testator, as disclosed by such instruments, is not conclusive upon that point, as is a record of a court of justice of the proceedings, which occurred therein.

The writ in favor of the pauper in this case was made under his own direction, by a practising attorney, and indorsed by the plaintiff therein at the time. The writ bore a true date, according to the evidence, and it was made on Feb. 23, 1828, the day on which the town of Wellington was incorporated. The attorney had no other knowledge of the residence of the pauper at that time, than such as he then derived from him. It was proper, that the places of the residence of the parties to the writ should be inserted. The writ would not be perfect without them according to the forms prescribed by the statute. The writ being made at the request of and for the pauper, while he was present with the attorney, every thing therein is supposed to have been done by his direction or his subsequent approval; and the writ is a document of as great solemnity as would be a deed made at the same time, or a notice to citizens to attend school district meetings. It was made in the ordinary course of business of the attorney, and the facts introduced from the testimony of the attorney and the docket, in which he had entered the memorandum of the suit, without objection, certainly raises a strong presumption that the writ itself would contain a state-

ment of the residence of the one, who caused it to be made, and that such statement would be true. The satisfaction to the mind, to be expected from an inspection of the writ, under such a chain of facts might be very full and clear ; much more so, than the recollection simply of the pauper himself. It is a species of evidence, upon the point of residence of the pauper, which would not probably mislead, and exhibits a fact which could not be shown in any other mode with any greater degree of certainty. The reasons for its introduction, are certainly as strong as those given for the admission of minutes and entries made by deceased persons in the cases cited, and may be regarded as somewhat analogous. The writ as evidence, in connection with other facts in the case, falls within the principle applicable to wills, deeds and other solemn instruments, and we think it was equally admissible on the question of domicil.                    *Exceptions overruled.*