EDWARD N. LAPHAM *v.* STEPHEN KELLY.

*Evidence.   Payment.*

A pass book, upon which a party entered at the time memoranda of certain payments made by him upon a note which he owed, is not admissible as *independent* evidence by itself to prove such payments. But it may be referred to by such party, when a witness, for the purpose of refreshing his recollection of the fact, and it may go to the jury when used for that purpose, and also as confirmatory of the testimony of the party.

If the witness testifies that the facts were within his recollection when he made the memorandum, and that he is confident that he made it correctly at or about the time of the transaction, the memorandum may go to the jury, in connection with his testimony, as evidence of the details of the matter, even though at the time of testifying he has only a general recollection of it.

If one, owing two debts, overpay one of them, and there is any testimony tending to show that the parties mutually expected such overpayment to apply upon the other debt, it is error for the court, in an action upon the latter debt, (no plea of set off being filed,) to instruct the jury that such overpayment can not be regarded as a payment upon the debt in suit, but can only be treated as the basis of an independent action to recover it back, or of a plea of set off.

ASSUMPSIT upon a promissory note, signed by the defendant, and payable to John V. Lapham, or bearer. The declaration also contained the common money counts. Plea, the general issue, with notice under the statute (Acts of 1856, No. 8,) that the defendant would rely upon and show payment in defence. Trial by jury at the March Term, 1861, KELLOGG, J., presiding.

It appeared that on the date of the note in suit, the defendant executed to John V. Lapham, two other promissory notes, which, with the note in suit, were transferred by the payee to the plaintiff, soon after their execution. It was admitted that after these notes were transferred to the plaintiff, there was an understanding had between him and the defendant, that he should receive payments amounting to the sum of one hundred dollars or more, to apply on either of the three notes, at any time when the defendant might desire to make such a payment.

The defendant testified that the two notes which first became due, were paid and taken up on the 11th November, 1853, or a few days thereafter, and that there was an over-payment of " about twenty-three dollars " on them at the time they were taken up, and that there had been a controversy between the plaintiff and himself, whether the sum so over-paid was reckoned in and applied, as a part of one of the subsequent payments indorsed on the note in suit—the plaintiff claiming that it was so included and applied, and the defendant claiming that it was not. The plaintiff testified that at the time the two notes were paid and taken up, which, as he thought, was " about the 20th December, 1855," there was a balance of over-payment made by the defendant on the same, "of somewhere about twenty dollars," which was to be accounted for to him, and that he, the plaintiff, kept the money, and that this over-payment was included and accounted for to the defendant, in the first indorsement made on the note in suit. This was all the testimony in the case, in relation to this over-payment.

The defendant testified that he personally paid to the plaintiff, the sum of $150, on the 20th November, 1853, at the tavern at Danby Borough, and the further sum of $200, on the 15th December, 1853, at the Union Store, in the same village ; and

Lapham v. Kelly.

that both payments were made to be applied on the note in suit. The plaintiff denied both of such alleged payments; and these were the only payments which the defendant claimed to have made on the note in suit, exclusive of the endorsements. The defendant claimed that, in addition to the payments indorsed on the note in suit, the amount .of the said over-payment made on the two other notes, together with these two alleged payments, which were denied by the plaintiff, should be allowed and applied on the note in suit; and, the principal question on the trial was, whether these two payments, so contested, and in dispute between the parties, as aforesaid, were made as claimed by the defendant.

The defendant introduced evidence tending to show that all of the payments made by him on the three notes, were made by himself personally, and that, at the time when he made the payments on the note in suit, the note was not there, and that he never took any receipt for any payment made by him personally on said note, and that the indorsements made on the note, were not, in any instance, made in his presence. The plaintiff testified that no payment was ever made to him on the note in suit, unless the same was indorsed on the note, and that the first that he ever heard, in respect to these two disputed payments, was from the defendant, while testifying as a witness on the trial.

.The defendant also testified that when the payments on each of the three notes were made, he kept a pass-book, which was the book, and the only book, on which his cash transactions were entered during that period; and that each of the entries on this book was made at the time when the transaction of which it purported to be an entry, took place; and that the plaintiff saw this pass-book, and examined it, when the two notes which first became due, were finally paid and taken up. The defendant then produced this pass-book, and offered the same as independent evidence, tending to show the payment by him to the plaintiff, of the sums, which the defendant claimed to have paid on the note in suit; and the same being objected to by the plaintiff, it was excluded by the court. To this decision of the court the defendant excepted. But the court admitted the pass-book, as a memorandum made and kept by the defendant, to which he

Lapham *v.* Kelly.

he might refer, for the purpose of refreshing his memory in respect to the matter of any entry therein contained, and the pass-book was treated as being in the case for this purpose.

The court ruled, and so instructed the jury, that if the jury should find, as the defendant's testimony tended to show, that the amount of the over-payment on the two notes which first became due, was at the time of trial in the hands of the plaintiff, as money to be accounted for by him to the defendant, still, as the same testimony would, if believed, support a separate action, or a plea of set-off, in favor of the defendant against the plaintiff for the amount of this over-payment, the defendant could not avail himself of the benefit of the over-payment on the other two notes, in support of his defence of payment of the note in suit. The defendant filed no plea in offset in this suit. To this decision and instruction the defendant also excepted.

*Linsley & Prout* and *M. H. Cook*, for the defendant.

*D. E. Nicholson* and *E. J. Phelps*, for the plaintiff.

PECK, J. This was an action on a promissory note for $1000, dated April 5th, 1853. The only question litigated before the jury was as to the amount of payments made by the defendant on the note. It appears that some payments were endorsed upon the note, about which there was no dispute. But the defendant claimed and testified that he personally paid to the plaintiff $150, on the 20th November, 1853, at the tavern at Danby Borough, and the further sum of $200, on the 15th December, 1853, at the Union Store in the same village, both to apply on the note in suit. The plaintiff denied these payments, and testified in substance that no such payments were made. It appears that two other notes for $1000 each were given at the same time the note in suit was executed, which had been paid from time to time and taken up. All these notes were executed by the defendant to John V. Lapham, and before payment were transferred to the plaintiff, to whom all the payments were made. The defendant testified that when the payments on each of the notes were made, he kept a pass-book, which was the book, and

Lapham *v.* Kelly.

the only book, on which his cash transactions were entered during that period, and that each of the entries on the book was made at the time when the transactions respectively took place. The defendant produced the book on the trial in the county court, and produces it here, it being referred to in the exceptions. The book contains entries, in the form of charges to the plaintiff, of the two payments in dispute, corresponding in sums and dates with the defendant's testimony on this point.

This book was offered in evidence by the defendant as *independent* evidence to show these payments, and on objection by the plaintiff it was excluded by the court as independent evidence, to which decision the defendant excepted. The court, however, admitted the book as a memorandum made and kept by the defendant, to which he might refer for the purpose of refreshing his memory, and it was treated, as the exceptions state, as being in the case for that purpose. From this we understand the book was treated as evidence, and went to the jury with the other evidence in the case. This seems to be conceded by the defendant's counsel; at least as far as this, that it went to the jury. But the court decided in thus admitting the book that it was not independent evidence. This decision we think was correct. On inspection of the book, considering the character and purpose of the entries and the defendant's testimony, the book, in the opinion of the court, is not such a book kept in the regular course of business, as to be admissible as evidence *per se*, independent of the testimony of the party tending to prove the correctness of the entries of the transaction in dispute; especially as the entries are not entries of a transaction creating an indebtedness, like the sale of goods, the performance of services, regularly charged on the book of accounts of the party, but a memorandum of a payment made upon a note in discharge of a debt. The entries must be regarded as in the character of a private memorandum, made to preserve the facts in the recollection of the witness. In such cases the entry or memorandum is not independent evidence; it can in general only be used to refresh the recollection of the witness, or as confirmatory of his testimony. The light in which such memoranda are to be regarded, the purpose for which they are to be used, under what circumstances and to what extent

they may be treated as evidence, is a question which has been much discussed in the books, and in relation to which the authorities are far from being uuiform. We think it may safely be said that the authorities establish the proposition recognized in the decision of the county court, that they have not the force of independent evidence, but are dependent on the testimony of the witness that the facts were within his knowledge and recollection when he made the entries, or memoranda, and that they were correctly made. ✓The county court was also right in saying the book was evidence to refresh the recollection of the witness, and in allowing it to go to the jury. Formerly the rule in England seems to have been that such a memorandum could only be used by the witness, and if on reference to it for the purpose of refreshing his memory he could not recollect the facts contained in it, his testimony was excluded, and whether he had a present recollection of the facts or not, the memorandum could not be used or allowed to go to the jury. But a more liberal rule seems now to prevail there. It is now there left to the witness to say whether he has such confidence in the accuracy of the memorandum that he is willing to testify to the fact; if so, his evidence is received, although he at the same time says that he has not a present recollection of the facts. The rule that has latterly prevailed in this country is equally liberal, and in one respect more so, as the memorandum or entry is often allowed to go to the jury with the testimony of the witness. If the witness testifies that the facts were within his knowledge and recollection at the time he made the entry, and is confident that he made it correctly about the time of the transaction, and still recollects the transaction generally, although not all the details of the entry, his evidence is received in connection with the memorandum, and both go to the jury, and the memorandum is regarded as auxiliary to, or confirmatory of the witness, and may also be used as evidence of the details to supply the present want of recollection, particularly as to names and dates. There are cases which go further, and hold that it may be used in connection with such evidence as to its having been correctly made at the time of the transaction, although the witness can not recall to his recollection any of the facts indicated by it. Such entries

Lapham *v.* Kelly.

are auxiliary evidence, also, when the witness still professes to recollect the facts, as many of the cases hold. This is reasonable, as, on inspection of the entry by the jury, it may contain internal evidence as to the time when it was made, and if made at the date of the transaction, it tends to confirm the witness, as he would be less likely to have forgotten the transaction when he made the entry than when called on to testify, after a lapse of time, without any cotemporaneous entry or memorandum to refresh his recollection. Hence it is proper that the entry should be submitted to the jury. Some cases are cited from New York by the defendant's counsel to show that such entries are admissible as independent evidence, but they do not sustain the proposition. Indeed, in one respect those decisions do not go so far as we have already stated the modern rule to be. There they only allow the entry or memorandum to go to the jury, when the witness has not a present recollection of the facts. In such case they admit the entry or memorandum as secondary evidence on the same ground that parol evidence is admitted to prove the contents of a lost written instrument; treating the lost recollection of the witness as they do a lost note or other instrument. In *Russell* v. *The Hudson R. R. R. Co.*, 17 N. Y. 134, not cited by counsel, the memorandum was read to the jury in connection with the testimony of the witness, and the judgment was reversed because it did not appear but that the witness recollected and testified to all the facts contained in his memorandum. This case is cited and approved by the court in *Gay* v. *Wead*, 22 N. Y. 362, cited by the defendant's counsel. If we follow that case the error of the county court was in letting the book go to the jury at all. But we do not think the rule should be thus limited. The book was not independent evidence, and the county court were not in error in so ruling on the admission of it. It was not error in the county court in holding that it might be referred to for the purpose of refreshing the recollection of this witness. It can not be complained of as error that the court excluded the book from the jury, for it was admitted and allowed to go to the jury. But we think it was admissible also for another purpose, that is, as confirmatory of the evidence of the defendant in connection with his testimony. But there is no error of which the

defendant has the right now to complain.  If the defendant's counsel wished to use it for that purpose, he should have called the attention of the court to it in the course of the trial, or asked some instructions ·to the jury in relation to it.  In the absence of anything of this kind, and in the absence of anything to show what instructions were given to the jury on the subject, we can not say there was error.  The fact that the court did not assign all the reasons which they might have assigned for admitting the evidence, or name all the purposes for which it might be used, is not error, as it does not appear that the defendant was deprived by any ruling of 'the court of any legitimate use of the evidence which he claimed.

2.  There is an exception taken by the defendant to the ruling of the court in relation to the $23.00 which he claimed to have allowed as. a payment.  The court charged the jury as to this item, that if the facts were as the defendant's evidence tended to prove, he could not avail himself of it as a payment, as it would entitle him to maintain an action upon it.  If the evidence had any tendency to show any agreement or understanding between the parties, either at the time of, or subsequent to, the receipt of the $23.00, that it should apply upon the note in suit, this instruction was erroneous.  In our opinion it had such tendency.  The three notes given at the same time constitute substantially .one debt.  It was agreed between the parties that the defendant might at any time pay any sum not less than $100, to apply on either of the notes.  He paid from time to time until about the 11th November, 1853, as the evidence tended to show, when he made a payment and took up the₃other two notes.  At this time there was an over payment of $23,00.  There was a dispute between the parties whether this sum had been subsequently applied on this note and included in one of the endorsements.  It is termed an overpayment, but it is not shown to have been an overpayment by mistake.  If it was simply a payment of so much more than the amount due on 'the other two notes, it is open to the inference that the surplus was mutually expected to be applied on this note.  This is rendered the more probable from the fact that the plaintiff claimed before the trial and on trial that he had so applied it.  The judgment must therefore be

Lapham *v*. Kelly.

reversed.  If the plaintiff, however, elects to remit the $23.00 and interest, taking the amount and time of payment as the defendant's evidence tends to prove it, he may have judgment accordingly, but still the defendant must recover costs in this court, as he succeeds in reversing the judgment.

The judgment of the county court is reversed, and as the plaintiff elects to remit the $23.00, judgment is rendered for the plaintiff with that deduction.