ANNIE CRANDALL ARNOLD *vs*. MARCELLUS L. HUSSEY, et als.

Piscataquis. Opinion November 5, 1913.

*Due Care. Evidence. Exceptions. Hearsay Evidence. Ice. Negligence, Private Diary. Public Records. Sidewalks. Water From Roof.*

Upon the question, whether the weather conditions on the day of the accident were such as to congeal the water flowing from the roof of the building and thus form the ridge of ice complained of, or whether the weather was so warm as to avoid the conclusion that the ice could thus form, the defendant introduced the private diary kept by James Ham, then deceased, which purported a record of the weather.

*Held:*

1. That entries of deceased persons in books kept by them, but not connected with the suit in question, and not made in the performance of any duty, nor in the course of their own business, are inadmissible.

2. That an entry made by a person in the ordinary course of his business, or vocation, with no interest to misrepresent, before any controversy or question has arisen, and in a book produced from the proper custody, is competent evidence, after his death, of the facts thus recorded.

3. The diary offered and admitted was a book of private memoranda, whose entries were not made by the owner in the performance of any duty, nor in the regular course of his own business and were inadmissible.

On exceptions by plaintiff. Exceptions sustained.

This is an action on the case to recover damages from the defendants, owners of a certain building situated in Guilford, in the County of Piscataquis, and known as the Braeburn Block, for injuries received in consequence of the careless and negligent manner in which the said defendants managed and controlled said building, or Braeburn Block, so called. That on account of said negligent and careless management of said building, the rain, ice and snow fell from said building upon the sidewalk rendering it slippery. The plaintiff, while travelling on said walk, slipped and fell upon the ice, causing the injuries complained of. Plea, general issue. In the course of the trial, the defendants introduced, and were allowed to read to the jury, extracts from the private diary of one James Ham, deceased, purporting to be a record of the weather conditions.

The plaintiff excepted to the admission of said evidence. The jury returned a verdict for the defendants.

The case is stated in the opinion.

*J. S. Williams, and C. W. Hayes,* for plaintiff.

*Hudson & Hudson,* for defendants.

SITTING: SPEAR, CORNISH, KING, BIRD, PHILBROOK, JJ.

SPEAR, J. This case comes to the Law Court upon exceptions, which are stated as follows: This is an action brought for the purpose of recovering against the defendants, as owners of the Braeburn Block in Guilford, for negligence in so constructing and maintaining said block that the water from the roof was precipitated upon the sidewalk, wholly on the private property of the defendants, so that a ridge of ice naturally would be formed, and the plaintiff alleges actually was formed on said walk in front of the postoffice which was in said building. Evidence was introduced which tended to show that a ridge of ice was formed in front of the said postoffice, and that the plaintiff in the exercise of due care and in the prosecution of lawful business, stepped upon said ridge of ice, and slipped, breaking her leg, which was the injury sued for.

The defendants introduced evidence which tended to deny the fact that there was any ice there at the time of the injury, and for the purpose of showing that the weather on the afternoon of the day on which the accident happened was too warm for the formation of ice, offered to be read to the jury extracts from the diary of one James Ham. Evidence in regard to said diary was adduced by the defendants from their witness, Ernest Ham, which is as follows: Q. What is your residence? A. Guilford. Q. Your father's name? A. James Ham. Q. When did he die? A. The 6th of November. Q. Have you in your possession a record of the weather in his handwriting? A. Yes, sir. Q. Do you know that he kept a record of the weather there in Guilford village? A. Yes, he always did. Q. Will you let me see his book? I show defendant's exhibit No. 1, and calling your attention to a page at the top of which are the words "Thermometer, Saturday, Jan. 21, 1911," and "weather," and to the handwriting directly thereunder, ask you if that is the handwriting of your father? A. Yes, it is.

Mr. HUDSON: We offer that. Mr. HAYES: We object. THE COURT: A private diary, was it? Mr. HUDSON: Yes, your honor. THE COURT: Not kept as a part of any employment or duty. Mr. HUDSON: Simply a matter of custom. THE COURT: Do you dare risk it? Mr. HUDSON: Yes, your honor. THE COURT: Admitted. Mr. HAYES: Exceptions? THE COURT: Certainly. Q. Do you know how many times a day he took the temperature? A. Twice a day, at six in the morning and six at night. Mr. HUDSON: "Saturday, Jan. 21, 1911, 10 above. Cloudy, S. W. P. M." S. W. means wind southwest. That was in the A. M. "P. M. 36 above."

The exceptions raise a question upon the competency of one class of hearsay evidence, upon which the authorities are not in full accord. When a deceased person, who is a stranger to the transaction has made entries in a book, which become relevant to the proof of some fact in issue in the case on trial, such entries with certain limitations may be admitted in evidence, and although not made in the presence of the parties, and not directly concerning their transactions, yet they may be pertinent and even conclusive proof of coeval facts.

But just what the limitations are is where the authorities divide. Yet there seems to be but one qualification that differentiates the decisions. All agree that such entries to become admissible must be made "in the ordinary course of business." Some hold that they must also be made against the interest of the parties making them; others, that this is not essential. Accordingly the result to be reached is not whether this kind of testimony is competent, but what are the limitations to its admissibility. As suggested, the important division of the courts upon the limitations is confined to the one question, whether the entries made must be against interest. But this limitation has been rejected by our court, as will appear below.

While no Maine cases are cited by plaintiff's counsel, yet the Maine reports, in several opinions, contain as comprehensive and satisfactory a solution of the question as we have been able to find. *Augusta* v. *Windsor,* 19 Maine, 317, very early announced the rule on this subject, in harmony with the leading cases of that time, confirmed by the weight of authority since, and consistent with both reason and authority now. The principle here enunciated for the

government of the admission of this class of testimony is found in this language, adopted from *Nichols* v. *Webb,* 8 Wheat, 337: "We think it a safe principle, that memoranda made by a person in the ordinary course of his business of acts or matters, which his duty in such business requires him to do for others, in case of his death, are admissible evidence of the acts and matters so done." In the next paragraph the opinion in terms rejects the limitation, found in some states, that the entry must appear to have been made against the interest of the party making it, saying: "This court is not satisfied with the reasoning upon which that limitation was introduced, and does not feel obliged to adopt it."

With the statement of this rule, which has not been modified or repealed, we might well sustain the exceptions without further citation, but as no recent opinion, that we are aware of, has had occasion to discuss this precise question, where it was directly raised, and became the pivot upon which the decision of the case turned, it may be well to collate the few decisions that are found, and note the different forms of expression in which the rule is announced. We have already referred to *Augusta* v. *Windsor* in the 19th Maine. The next case, in which the point is considered is *Dow* v. *Sawyer,* 29 Maine, 117, which uses this language: "Contemporaneous entries made by third persons in their own books in the ordinary course of business, the matter being within the knowledge of the parties making the entry and there being no apparent motive to pervert the fact, are received as original evidence." This case also holds that such entries may be received without extraneous proof, if upon inspection of the books they appear to have been fairly kept and contain entries respecting the matter in issue. The next case is *Old Town* v. *Shapley,* found in 33 Maine, 278, which states: "A minute in writing made at the time when the fact it records took place, by a person since deceased, in the ordinary course of his business, corroborated by other circumstances, which render it probable that the fact occurred, is admissible in evidence. And such a minute is competent, where it is one of a chain or combination of facts, and the proof of one raises a presumption, that another has taken place." See also cases cited. In *Lord* v. *Moore,* 37 Maine, 208, it is stated this way: "To make such entries in books of a private character admissible, the books in which they are made must have been fairly

and regularly kept, the entries must have been made by a deceased person whose duty it was to make them, or in the regular course of business, who had personal knowleged of the subject matter entered, and whose situation was such as to exclude all presumption of his having any interest to misrepresent the fact recorded." See also *Pike* v. *Creahore,* 40 Maine, 503. In Wigmore on Evidence, Vol. 2, sec. 1523, the author says relating to this class of testimony: "The first general requirement is that the entry must have been made in the regular course of business. The judicial phrasings of this requirement vary in terms. The entry must have been, therefore, in the way of business." In *Leask* v. *Hoagland,* 215 N. Y., 171, 98 N. E., 395, is found this expression: "The reason for receiving statements or entries made in the course of business as an exception to the rule (hearsay rule) is that they were made as a part of the regular course of ones livelihood or profession." In *Kennedy* v. *Doyle,* 10 Allen, 161, we find this conclusion: "In the United States, the law is well settled that an entry made by a person in the ordinary course of his business or vocation, with no interest to misrepresent, before any controversy or question has arisen, and in a book produced from the proper custody, is competent evidence, after his death, of the facts thus recorded." From these varied expressions of the rule, it seems to be well established that the entries of deceased persons in books kept by them, but not connected with the suit in question and not made in the performance of any duty, nor in the course of their own business, are inadmissible; and we fail to find any cases in which a contrary rule is declared. On the other hand, the cases are numerous where entries not made in accordance with the rule herein stated have been rejected.

While public records, kept in the discharge of public duties, when produced by the proper custodian, tending to prove the facts therein contained, are admissible, such as entries made in books kept by the weather bureau, this question is not here involved and requires no discussion.

It very clearly appears from the exceptions that the diary offered and admitted was a book of private memoranda, whose entries were not made by the owner in the performance of any duty nor in the regular course of his own business and were therefore inadmissible.

It was argued that, even if the exceptions were sustainable, the

admission of the entries in the book were not prejudicial. We are not able to concur in this view. The very question at issue, was whether the weather conditions on the day in question, were such as to congeal the water flowing from the roof of the building, and thus form the ridge of ice complained of, or whether the weather was so warm as to avoid the conclusion that ice could thus form.

*Exceptions sustained.*