EVA L. B. RHOADES, administratrix, *vs.* NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

Middlesex.   March 20, 21, 1917. — May 25, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Evidence,* Competency, Book entries, Admissions. *Negligence,* Employer's liability, Federal employers' liability act. *Interstate Commerce. Agency,* Existence of relation.

At the trial of an action of tort against a railroad corporation under the federal employers' liability act to recover damages for the death of a conductor of a train of the defendant, where, upon the question whether at the time of the injury resulting in the death of the conductor the train of which he had charge

was engaged in interstate commerce, an employee of an express company has testified that he had in his charge upon the train certain packages, that all that he knew as to the places from which and to which the packages were being shipped was derived from marks upon the packages and way bills accompanying them and that he made a transcript of these entries from the way bills to a book kept by him, such testimony does not render the book and its entries competent evidence to show, from entries therein, that some of the packages came from without the State and were being carried in a continuous shipment to be delivered within the State.

The book and entries above described, while made in the usual course of business by the employee of the express company, were not required by law to be made, were not shop books and were not entries "in an account . . . book" within the meaning of St. 1913, c. 288.

Neither the entries above described, nor an entry on a "delivery sheet" showing to whom according to the way bill a certain package was to be delivered, were admissible as secondary evidence to prove the contents of way bills issued by the express company and to show that the train in question was engaged in interstate commerce, where it did not appear that the express company in issuing the way bill acted as agent or by authority of the railroad corporation.

TORT under the federal employers' liability act by an administratrix who, in the twelfth count of her declaration, sought to recover damages for the death of her intestate, Justin W. Rhoades, who was killed while in the employ of the defendant as a conductor and was alleged to have been engaged in interstate commerce, by being run over by a train negligently being backed down upon him at an excessive speed as he was examining a broken coupling on the train of which he had charge. Writ dated June 20, 1913.

In the Superior Court the case was tried before *Keating*, J. Material evidence is described in the opinion. A verdict was ordered for the defendant upon the first eleven counts of the declaration. The judge, subject to exceptions by the defendant, submitted to the jury two questions: Was the defendant engaged in interstate commerce in operating the train of which the plaintiff's intestate was conductor at the time of the injury resulting in his death? and, Was the plaintiff's intestate employed in interstate commerce at that time? The jury answered both questions in the affirmative. The judge thereupon, subject to exception by the defendant, submitted the case on the twelfth count to the jury, who found for the plaintiff in the sum of $8,800; and the defendant alleged exceptions.

*G. L. Mayberry,* (*L. A. Mayberry* with him,) for the defendant.

*J. E. Hannigan,* (*C. R. Cabot* with him,) for the plaintiff.

PIERCE, J.   This is an action of tort brought under the federal employers' liability act to recover damages for the death of the plaintiff's husband, Justin W. Rhoades, a conductor in the employ of the defendant.

Upon the issue whether the parties were engaged in interstate commerce in the operation of the train at the time of the injury to the intestate, the plaintiff introduced the testimony of Edward J. Pierce, a messenger of the American Express Company, in substance to the effect that he had a book, made up by himself while on the train, which told the valuable packages that were left at the different stations; that these packages were accompanied by way bills; that each package had a way bill and was copied on to the book from the way bill; that he made the entries on this book from way bills he received; that the only information he had with reference to the place where any of the packages came from was the information he got from the way bill corresponding with the name and sticker on the package; that whatever was on the surface of the packages in the way of names and stickers and whatever there was on the way bills was the entire source of information from which he made the entries; that he knew nothing about what any package contained or about where it came from except the information he got from the package itself and the way bill.

Subject to the exception of the defendant the witness testified, that on December 24, 1912, certain packages came from outside the State and were delivered within the State; that he "left one package from West Shore Depot, New York, a sealed package at West Newton; from Albany, New York, a package that went down to Newton Centre, and from West Shore, New York, a package of cigars; from West Shore again a sealed package for West Newton, signed for by A. Kirk." The book of entries was then put in evidence subject to the exception of the defendant, and from the book sixteen different entries were read to the jury of packages brought from without the State and delivered within the State on December 24, 1912. One of these packages bore the way bill number 317. A delivery sheet was then admitted in evidence subject to the exception of the defendant, and the entry from this sheet was then read to the jury as follows: "Waybill 317, dated December 23rd, from Albany, New York; package, jewelry

sealed; addressed to F. Witherbee; destination, Brae Burn Country Club." Frances Witherbee testified that she received a present of jewelry at Christmas at the Brae Burn Country Club; that there was a card in the package; that she did not have the card now; and was permitted to testify subject to the exception of the defendant, that the name on the card was Frank Fripp, and that he lived in Albany.

The book and entries should not have been received in evidence to prove that the packages on the train were being carried in a continuous shipment from one State to their destination in another State. The knowledge of Pierce, who made the declaration, was derived solely and entirely from an inspection of way bills and stickers on packages. The book and entries while made in the usual course of business were not required by law to be made. They were not shop books and they were not entries "in an account . . . book" within the meaning of St. 1913, c. 288. *Butchers Slaughtering & Melting Association* v. *Boston,* 214 Mass. 254, 259. *Kaplan* v. *Gross,* 223 Mass. 152.

The entries in the book and on the delivery sheet were not admissible as secondary evidence to prove the contents of the way bills; because the way bills themselves as acts, admissions, or declarations of the American Express Company, were not admissible against the defendant in the absence of evidence that the American Express Company received the packages or issued the way bills as agent or by authority of the defendant.

The evidence on cross-examination of the engineer as to the rate of speed the train of the intestate was running when the signal was given to stop it, could have no tendency to prove how fast the other train was moving when or just before it struck the intestate, and the evidence could not have injured the defendant. There was evidence to warrant a finding that the peril of the intestate should have been seen and the speed of the train sufficiently reduced to avoid striking him.

*Exceptions sustained.*