KENNETH A. HUNTER

*vs.*

FRANK H. TOTMAN

FRANK H. TOTMAN

*vs.*

KENNETH A. HUNTER

Aroostook.   Opinion, April 24, 1951.

*Roberts & Bernstein,* for plaintiff.

*James P. Archibald,* for defendant.

SITTING: MURCHIE, C. J., FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ. (THAXTER, J., did not sit.)

FELLOWS, J. These two cases were tried together before a jury in the Superior Court for Aroostook County, and are before the Law Court on exceptions and motions for new trials.

The first case of Kenneth A. Hunter v. Frank H. Totman was an action of assumpsit to recover for alleged balance due on sale and delivery of potatoes, by Hunter to Totman, which potatoes were claimed to be in the plaintiff Hunter's storehouse in January 1948. The first action was for the sum of $57,376, being equivalent to 14,344 barrels of potatoes at $4, less a credit of $54,236 paid by Totman, leaving a claimed balance of $3,140. The jury verdict, in favor of Hunter as plaintiff, was for $3,140. This first case now comes to the Law Court on defendant Totman's motion for new trial, on exceptions to denial of defendant's motion for a directed verdict, on defendant's exceptions to the admission of a record or notebook, exceptions to admission of certain expert testimony, and exceptions to admission of a

letter, which letter Totman claimed was in the nature of compromise.

The second case, or cross action, of Frank H. Totman v. Kenneth A. Hunter, tried with the first case, was an action of assumpsit to recover claimed overpayment in the sum of $4,520, as the difference between the $54,236 that Totman paid to Hunter, for potatoes claimed by Hunter to be in Hunter's warehouse, and 12,429 barrels that Totman says were actually there. The verdict in this second case was for Hunter as defendant. This second case, tried with the first case, is before the Law Court on plaintiff Totman's general motion for new trial, and on the same exceptions to admissibility of notebook, the expert testimony and the letter.

The facts appear to be that, during the season of 1947, Kenneth A. Hunter of Mars Hill, Maine, produced potatoes and stored some of them in his potato house. In January 1948 Frank H. Totman of Houlton, Maine, met Hunter at Mars Hill and discussed these potatoes. The parties disagree as to the exact conversation, but the sale in January 1948 by Hunter to Totman evidently involved 14,344 barrels of "field run" potatoes at $4 per barrel, and Hunter testified that at the time there were 14,344 barrels in his house, and the declaration in his writ bases his claim on that amount.

The potatoes in the potato house were shipped out of the potato house by Totman, and Totman claimed that the amount of potatoes purchased by him, and for which he had made payments to Hunter totaling $54,236, had not been put into the house. Totman's payment to Hunter apparently represents 13,559 barrels at $4.

There was a dispute as to the meaning of a "barrel of field run potatoes," but whether it has the meaning as testified to by various witnesses, of "as they come from the

field," or a "twelve peck barrel," or "a barrel of eleven pecks," presents jury questions as to the intention of the parties at the time of contract. It is not material here for this decision, because of the methods of proof. Also, if it means a twelve-peck barrel, Totman says he accounted for 12,429 barrels. If it is an eleven peck barrel, Totman says he accounted for only 13,559 barrels. Totman claimed a shortage in either event.

The quantity of potatoes in the potato house at the time of the sale in January 1948 is the main issue, and to prove the amount Hunter offered a record or notebook which was practically his entire case. This book was admitted, and exception taken.

## FIRST EXCEPTION

This record book was kept by Pauline Hunter, the wife of Kenneth A. Hunter. It contains no items of charges against Totman, or of credits. It is a memorandum book containing a transcript of picking records and trucking records. The book is not a book of accounts concerning Totman. There was a "truck count" and a "pickers' count" kept by the Hunters for their own purposes, such as amounts of payment due from them to pickers, etc. The original records of "tickets" were made by the potato pickers and by the truck drivers. Mrs. Hunter had no personal knowledge of her entries. The pickers' cards, made out by several different potato pickers of the number of barrels picked up, were placed on barrels in the field and collected by her son David Hunter. David was then 12 or 13 years of age and "followed the trucks." Mrs. Hunter entered totals in many instances and did not itemize each slip or ticket. There were two truck drivers, Vincent Lunn and Johnny Smith. Proof was not made of the book entries by the individuals who had knowledge, or who made the slips. One truck driver only was presented as a witness. David Hunter did

not testify. It does not appear that the other witnesses could not be easily obtained.

The only evidence presented by Hunter (to apply to either, and both, of these two cases that were on trial together) to show the amount of potatoes in the potato house at the time of sale, was this record or notebook. Mrs. Hunter testified, and on her testimony the "notebook" (as she called it) was admitted under Revised Statutes (1944), Chapter 100, Section 133. Mrs. Hunter said: "A. The pickers were supplied with picking tickets. Each picker had his own number, and attached a ticket with his number to each full barrel he picked. The truck drivers took the ticket off the full barrel and put it in a small box for that purpose, and at the end of the day's operation the truck boxes were brought to me. I counted the pickers' tickets and recorded them in a notebook." The presiding justice then admitted the book subject to Totman's exception. Mrs. Hunter later said: "A. At the end of each day each truck driver—and we had two—turned in to me a list or record showing the number of barrels which he had hauled to the potato house, so I kept a truck record on one page." On cross examination Mrs. Hunter testified that her son David Hunter (then between 12 and 13) "did not follow the trucks into the potato house, but that he was the person who gathered the pickers' 'tickets.' " The information to Mrs. Hunter, she says, came from three persons, Lunn, Smith, and her son David, who in their turn, received some of their information from others, or from "tickets" made by others.

The statute (passed by the Legislature in 1933 as Chapter 59 of the Public Laws of 1933) now Revised Statutes 1944, Chapter 100, Section 133, is as follows:

"An entry in an account kept in a book or by a card system or by any other system of keeping accounts shall not be inadmissible in any civil proceeding as evidence of the facts therein stated because it is transcribed or because it is hearsay

or self-serving, if the court finds that the entry was made in good faith in the regular course of business and before the beginning of the civil proceeding aforesaid. The court in its discretion, before admitting such entry in evidence, may, to such extent as it deems practicable or desirable but to no greater extent than the law required before June 30, 1933, require the party offering the same to produce and offer in evidence the original entry, writing, document, or account, from which the entry offered or the facts therein stated were transcribed or taken, and to call as his witness any person who made the entry offered or the original or any other entry, writing, document, or account from which the entry offered or the facts therein stated were transcribed or taken, or who has personal knowledge of the facts stated in the entry offered."

The law, "before June 30, 1933," as referred to in the above statute, is stated in *Mansfield* v. *Gushee,* 120 Me. 333, which case holds that in order to render account books admissible, where the entries were made on information given to the bookkeeper by third parties, it must be shown (1) the informant is dead or insane, or (2) the informant is beyond the jurisdiction, or (3) the informant is unable to attend court. See *Mansfield* v. *Gushee,* 120 Me. 333, at 347.

The question now before the court is whether, under Revised Statutes (1944), Chapter 100, Section 133, a notebook or inventory of the number of barrels of potatoes in a field, or the number delivered to a potato house, kept by a person who had no personal knowledge, from slips or "tickets," not being an account and not showing a charge or a credit, is admissible in evidence, without proof by the person or persons who had the actual knowledge. In other words, does the statute refer to an *account* kept to show a transaction, between the parties to the suit with debits and credits, or does it mean any inventory, count, statement, or

measure kept by one of the parties for his own convenience and use "in the regular course of business?"

In the construction of a statute the fundamental rule is the legislative intent. *Smith* v. *Chase,* 71 Me. 164; *Pierce* v. *Bangor,* 105 Me. 413; *State* v. *Koliche,* 143 Me. 281, 61 Atl. *(2nd)* 115, but a statute in derogation of the common law is strictly construed and is not extended by implication. *Henderson* v. *Berce,* 142 Me. 242, *50 Atl. (2nd)* 45; *Haggett* v. *Hurley,* 91 Me. 542, *40 Atl. (2nd)* 561, *41 L. R. A.* 362.

At the common law under the "shop book rule," a book of accounts showing debits and credits between the parties to the suit, was admissible as bearing upon the question of proof of delivery of goods sold or the performance of services rendered as charged in the shopkeeper's books, which, supported by the oath of the party presenting the books, or someone in his behalf, was admissible, if the person making the entries was dead, insane, unable to be present, or beyond the jurisdiction. Otherwise, the delivery or performance, must be proved by one cognizant of the facts. *Mansfield* v. *Gushee,* 120 Me. 333, 346, 347. By the above statute of 1933, the legislature intended to render a rule of proof less difficult, but does the rule extend to books or entries other than "accounts"? R. S. (1944), Chap. 100, Sec. 133.

The precise question presented by the exception in this case has not been previously decided in Maine. The above statute passed in 1933 was mentioned and incidentally discussed by the court in *Richardson* v. *Lalumiere,* 134 Me. 224 (decided in 1936) where the court stated that entries which were not a charge of goods delivered or services rendered are merely memoranda for a party's own convenience and not admissible in evidence, and cited *Waldron* v. *Priest,* 96 Me. 36, *51 Atl.* 235. The Lalumiere case also quoted *22 C. J.* 871 that "loose memoranda, or entries in diaries or memoranda books used for recording any matter of which

the owner may wish to make note, while admissible for the purpose of refreshing the memory of a witness, have generally been excluded as independent evidence." The above case of Waldron v. Priest, which holds a lawyer's docket inadmissible, cited for authority the case of *Lapham* v. *Kelley*, 35 Vt. 195, wherein the Vermont court decided that entries in a passbook of payments made, in the form of charges against the other party, were not admissible as *independent* evidence because no such book was kept in the regular course of business to show the sale of goods or the performance of services regularly charged on books of account, and the passbook could be used only to refresh the recollection of the witness.

Entries of deceased person, as private memoranda to prove weather conditions, are not admissible. *Arnold* v. *Hussey*, 111 Me. 224, but with regard to *ancient* facts, they may be. See *Old Town* v. *Shapleigh*, 33 Me. 278.

Our court has decided that where the entries in a book of accounts do not itemize the transactions recorded, and comprise the details of several transactions, the book is not admissible as independent evidence. *Putnam* v. *Grant*, 101 Me. 240. Statements of the plaintiff himself or of third persons, such as invoices, bills of lading or protests, are not admissible. *Paine* v. *Ins. Co.*, 69 Me. 568.

In an action brought in Massachusetts to recover the value of fruit jars, the plaintiff offered an account or inventory, made up in part from information obtained from slips turned into the office by the glass jar makers. The Massachusetts Court held it inadmissible under a similar statute. The court says:

> "While this statute is a rule of evidence, it applies only to 'an entry in an account kept in a book or by a card system or by any other system of keeping accounts.' This statute, undoubtedly, was passed to change the law as laid down in Kent v. Garvin,

1 Gray, 148 and similar cases that followed, and simply to relieve against the hardships sometimes experienced in making proof in accordance with the law there laid down. This language confines the operation of the statute to an entry in an account, using the word 'account' in the sense of a series of charges for merchandise or other matter ordinarily the subject of a book account. The statute did not enlarge the kind of evidence which could be proved by books of account which heretofore was admissible when supported by the evidence of all parties to the entries in the book account. The reason why the entries in Kent v. Garvin were held incompetent was because they had been transferred to the book by a clerk, from entries or memoranda kept by another person, who was not called as a witness to support his entries and deliveries of the articles so charged. The statute authorizes the court to admit as evidence such entries if it is found that they were made in good faith, and in the regular course of business, and before the beginning of the proceeding. It is to be observed that the statute applies to 'an entry in an account * * * * book.' "

*Kaplan* v. *Gross,* 223 Mass. 152, 154; *Rhoades* v. *N. Y. Central* R. R., 227 Mass. 138.

The plaintiff Hunter relies in his brief on the case of *Bank* v. *Hollingsworth & Whitney,* 106 Me. 326, and similar cases, involving the records of an agreed scaler who obtained information from his assistants. The courts have never considered that the shop book rule applied to scalers under these circumstances. Scalers are usually skilled experts who must not only count and measure, but exercise judgment in estimation, and have for generations been recognized as acting in a quasi judicial capacity when agreed upon. *Hutchins* v. *Merrill,* 109 Me. 313; *M. D. & I. Co.* v. *Allen,* 102 Me. 257.

This statute of 1933 (now Revised Statutes, 1944, Chapter 100, Section 133) is, in the opinion of the court, a stat-

ute that affects the "shop book rule," and is applicable only to entries that may fairly be considered an "account." The statute does not apply to entries in a book, or entries in a card or other system, which are simply memoranda made for the convenience or purposes of the one who made them. Entries that cannot fairly be considered as an "account" are not admissible in evidence, except as has been previously permitted under certain circumstances, to refresh recollection or as statements against interest, without supporting proof from those who had personal knowledge of the facts. The first exception must be sustained.

## SECOND EXCEPTION

A witness was permitted to state as an expert that a smaller amount of potatoes would be removed from a potato house in the Spring than were placed in storage in the Fall.

Whether a witness called as an expert possesses the necessary qualifications is a preliminary question for the court. The decision is conclusive unless it clearly appears that the evidence was not justified, or that it was based upon some error in law. *Marston* v. *Dingley*, 88 Me. 546; *Conley* v. *Gas Co.*, 99 Me. 57. We see no exceptionable error here, although, under the circumstances of this case, the necessity for an expert on potatoes before an Aroostook County jury does not seem to us to be fully "justified." *Pulsifer* v. *Berry*, 87 Me. 405. In any event, the testimony admitted was harmless.

## THIRD EXCEPTION

The admission in evidence of a letter written by Totman to Hunter was excepted to, as being in the nature of an offer to compromise.

The admissibility of a letter or other evidence which contains an offer to settle a pending claim depends on intention.

If a person intends his offer to be a compromise settlement it is inadmissible. An offer to compromise a claim, or to purchase one's peace, cannot be shown to prove liability. If he intends an admission of liability, coupled with an endeavor to settle such liability, then it is admissible as evidence to prove such liability. It is the duty of the court to determine the preliminary question of fact as to what was the intention in making the alleged offer of settlement. To the proper exercise of his discretion no exception lies. *Finn* v. *Telephone Company*, 101 Me. 279.

The letter in question here was not an offer to compromise. It was an offer to pay $15,836 (and the checks were enclosed) "which is the balance due on the basis of 13,559 barrels field run at $4.00 per barrel." The letter further called attention to the fact that "this figure compared with your original advice to me of 14,344 barrels indicated a wind shrinkage of 785 barrels * * * this is a prohibitive shrinkage and if your records are correct, then there is something wrong somewhere * * *. I feel there is a possibility of error." The decision of the presiding justice to admit the letter was within his discretion. The letter was for the purpose of ascertaining the claims really existing, and what was justly due from one party to the other, that they might be fairly adjusted. *Cole* v. *Cole*, 33 Me. 542. See also *Beaudette* v. *Gagne*, 87 Me. 534; *Shaw* v. *Railroad Co.*, 108 Me. 568.

## MOTIONS

Frank H. Totman as defendant in the first case, and as plaintiff in the second, filed motions for new trials. Kenneth A. Hunter as the seller of the potatoes, based his claims in each suit on the notebook kept by his wife. The book, under the circumstances here and without supporting testimony from witnesses with personal knowledge, was not admissible.

The jury found for Hunter in both cases. In the case where Hunter was plaintiff, the verdict is the exact amount appearing by the Hunter inventory or memoranda in the inadmissible notebook. Both verdicts are, under the circumstances, clearly wrong.

*Exceptions sustained.*

*Motion for new trial in each case sustained.*

*New trials granted.*