ATLAS SHOE COMPANY *vs.* ABRAHAM BLOOM & others.

Suffolk.     January 26, 27, 1911. — September 6, 1911.

Present : KNOWLTON, C. J., MORTON, BRALEY, & RUGG, JJ.

*Contract,* Validity, In writing, Consideration. *Fraud. Guaranty. Evidence,* Of book accounts. *Equity Pleading and Practice,* Master's report.

The principle of law, that mere ignorance of the contents of a contract in writing which a party voluntarily executes is not sufficient ground for setting it aside when he subsequently discovers that its contents are different from what he supposed them to be, was applied in this case where the party seeking to set aside the contract was an old foreigner who was led to sign the instrument through deception practised upon him by his son, in which the other party to the contract in no way participated.

A master, to whom was referred a suit in equity by a wholesale dealer in shoes against the signer of a certain alleged guaranty, seeking equitable relief, found that, upon the defendant's son, a customer of the plaintiff, becoming in arrears in the payment of his account, the plaintiff stated to him " that his account must be protected and that unless he could get it guaranteed by a responsible person the plaintiff would have to close it," and " that to make his account good it must be changed to a consigned account and his present indebtedness guaranteed "; that the son communicated to the defendant the plaintiff's statement; that thereupon the defendant signed and delivered to the plaintiff an instrument in writing as follows : " For valuable considerations, I hereby guarantee full and complete payment to the " plaintiff " of all debts now owed or to be owed in the future by " the son " to the " plaintiff; that there was no evidence that thereafter any goods were sold to the son on open account. *Held,* that the guaranty could not be enforced because of lack of a consideration running from the plaintiff to the defendant, it not appearing that any continued credit was given to the son or that any proceedings against the son were forborne at the defendant's request.

Books of account as to mercantile transactions, the entries in which were transcribed from temporary memoranda made by clerks who had no knowledge of the sale and delivery of the goods therein mentioned except upon information received from other clerks whose duties are not shown, are not admissible in

evidence to prove the state of the account upon the sole supporting testimony of the clerks who made the entries in them.

If the plaintiff in a suit in equity discovers, after the filing of a report, adverse to him, of a master to whom the suit was referred, that through inadvertence he neglected to offer evidence which would have supported his contentions, he should move to recommit the report to the master for the hearing of further evidence. After the report has been confirmed and a decree entered dismissing the bill, from which the plaintiff has appealed, it is too late to ask that the case be reopened.

BILL IN EQUITY, filed in the Superior Court on March 24, 1909, against Abraham Bloom, his daughter Fannie Krouse and her husband, David Ziskend and Phillip Cohen, another son in law, alleging in substance that the defendant Bloom owed the plaintiff under the provisions of the agreement hereinafter quoted $1,993.42, that the plaintiff demanded payment of him, that he asked for time and forthwith and in fraud of his creditors conveyed to his daughter, the defendant Fannie Krouse, an equity in a house and land numbered 20 on Minot Street in Boston, that the daughter mortgaged the land to his son in law, the defendant Cohen, who participated in the fraud, and he in turn assigned the mortgage to the defendant Ziskend, who shared in the scheme to defraud the plaintiff. The prayers of the bill in substance were for a cancellation of the deed from Bloom to his daughter and of the mortgage then held by Ziskend, and for the application of the equity of the defendant toward payment of the debt owed to the plaintiff.

The case was referred to Arthur H. Russell, Esquire, as master. His findings were in substance as follows:

The plaintiff since the latter part of 1906 had been selling goods to one Bernard E. Bloom, the son of the defendant Abraham Bloom, who was established in business in Worcester. On February 3, 1908, the plaintiff asserted that Bernard was indebted to it in the sum of $1,508.71 for goods sold and delivered to him on open account in the regular course of trade. Before this time its officers had demanded of Bernard that he should furnish a guarantor upon his account and should change the account from an open to a consigned account. In response to this demand, Bernard on February 3, 1908, brought the defendant, Abraham Bloom, to the office of the plaintiff, where Harry N. Thomas, who had charge of the credits of the plaintiff, in the presence of the

defendant Bloom and others, dictated to a stenographer a paper in the following words: "February 3, 1908. For valuable considerations, I hereby guarantee full and complete payment to the Atlas Shoe Company, Boston, Mass., of all debts now owed or to be owed in the future by Bernard E. Bloom of Worcester, Mass., to the said Atlas Shoe Company"; and that the defendant Bloom was requested to sign the paper, which he did. Although this paper was dictated in the defendant Bloom's presence, he did not understand its terms by reason of his limited intelligence and unfamiliarity with the English language. At the time the amount in which Bernard was claimed to be indebted to the plaintiff was not stated to the defendant Bloom and was not shown to him. The only statement made to him at this time was a statement by his son, made to him in the Jewish language, that the paper which he was to sign was one making him responsible for the bill of goods to be delivered to his son, amounting to $200 or $300. No money of any kind was paid by any one to Abraham Bloom at the time of the signing of this paper, nor was any promise made to him of any money consideration.

No evidence was introduced as to the value of any goods delivered to Bernard on open account by the plaintiff after the date of the writing above referred to, February 3, 1908, if any were delivered.

On February 28, 1908, the defendant Abraham Bloom again was brought to the office of the plaintiff and was told by some person representing the company that it was necessary for him to sign a further paper, which was not read to him, but which he signed upon presentation. That paper was a guarantee to Rice and Hutchins, Incorporated, of the punctual performance by Bernard E. Bloom of an agreement made by him with Rice and Hutchins, Incorporated, under even date, which was an agreement with reference to goods to be consigned to said Bernard by Rice and Hutchins, Incorporated, or some other concerns or corporations controlled by said Rice and Hutchins, Incorporated. All goods delivered by the plaintiff to Bernard between March, 1908, and October, 1908, were on this so called consigned account.

In September, 1908, Bernard E. Bloom absconded. An in-

ventory was made up by the plaintiff on the stock of goods in his possession at Worcester which it had consigned to him. Possession of these goods then was taken by the plaintiff and they were reshipped to Boston and credited, leaving an apparent balance due to the plaintiff on this consigned account of $624.69.

The plaintiff claimed the balance due from Bernard upon open account upon September 21, 1908, to have been $1,424.85, which was $83.86 less than the amount which the plaintiff claimed Bernard was indebted to it on open account on the date of the signing of the first paper by the defendant Abraham Bloom.

" No evidence was offered as to any delivery of goods to Bernard E. Bloom other than the evidence that the books of the plaintiff company showed the amounts claimed, as hereinafter reported."

" The plaintiff produced its books of account and asked a witness, under whose supervision the books were kept, 'What do these books purport to show to be due from B. E. Bloom to the Atlas Shoe Company?' The books were kept upon what is familiarly known as the 'loose leaf system' and the entries thereon were made up from temporary memoranda, and the clerks who made the same had no knowledge of the sale and delivery except from information received from other clerks. I ruled that the books were not admissible as proof of sale or delivery, but I admitted the question as bearing upon information which the plaintiff claimed to have conveyed to Abraham Bloom at the time of his signing the paper of February 3, 1908. The defendant duly excepted to the admission of this evidence. The witness stated the amount to be as hereinbefore set out in this report and evidence was subsequently introduced by the plaintiff claiming that the amount of this indebtedness was stated to the defendant Abraham Bloom at the time of the signing of the paper of February 3, 1908."

The master also found that the plaintiff had brought an action against the defendant Bloom upon the alleged guaranty in the Municipal Court of the City of Boston, that judgment had been entered in that court upon default of the defendant, from which the defendant had appealed to the Superior Court and that the appeal was pending there when this suit was brought.

Because of the decision other findings of the master are immaterial.

The plaintiff excepted to the report for reasons which appear in the opinion.    The exceptions were heard by *Richardson, J.*, who overruled them.    A final decree was made dismissing the bill.    The plaintiff appealed.

*W. M. Blatt,* for the plaintiff.

*P. B. Kiernan,* for the defendants.

BRALEY, J.    The defendant Abraham Bloom signed the guaranty dictated in his presence, and upon which the bill is brought, although the master finds that he did not understand its terms because of his limited intelligence and inability to read our language.    But the plaintiff held out no inducements, and he could have refused to sign until the contents had been translated or fully explained to him, or, if deceived by the representations of his son that the undertaking only made him responsible for a small bill of goods to be delivered in the future, there is no statement that the deception was instigated or participated in by the plaintiff.    In the absence of fraud practised upon him, the defendant comes within the general rule, that mere ignorance of the contents of an instrument which a party voluntarily executes is not sufficient ground for setting it aside if ultimately the paper is found to be different from what he supposed it to be.    *Rice* v. *Dwight Manuf. Co.* 2 Cush. 80.    *Leddy* v. *Barney*, 139 Mass. 394.    *Freedley* v. *French*, 154 Mass. 339, 342.

But if he cannot avoid the effect of his signature, the guaranty in terms included not only goods to be furnished, but payment of any past indebtedness due to the plaintiff from Bernard E. Bloom, and as the guaranty formed no part of the original credit, the consideration of the original debt would be insufficient to support the promise.    *Cabot* v. *Haskins*, 3 Pick. 83, 93.    *Tenney* v. *Prince*, 4 Pick. 385.    The plaintiff endeavored to supply this essential element, and the master reports, that, the plaintiff having informed the son before the guaranty was given " that to make his account good it must be changed to a consigned account and his present indebtedness guaranteed," and " that his account must be protected and that unless he could get it guaranteed by a responsible person the plaintiff would have to close it," and that the defendant signed after this last statement had been communicated to him.    The master, while he does not specifically state that the defendant obligated himself to preserve

the credit of his son, finds that no goods were furnished under the guaranty, and no action was brought against the son on the past account until some six months had elapsed. If the only consideration was a continuous credit in the future, it had failed, as no goods were delivered, and the failure of consideration would discharge the guarantor. *Cooper* v. *Joel*, 1 DeG., F. & J. 240. But if the words " that his account must be protected " can be treated as a promise by the plaintiff to forbear to press collection of the debt, followed by an actual forbearance for a reasonable time, even if no time was named, there would have been a sufficient consideration to support the guaranty, notwithstanding the master also reports that no money was paid to the defendant nor any promise made to him of any money consideration. *Lent* v. *Padelford*, 10 Mass. 230. *Walker* v. *Sherman*, 11 Met. 170. *Johnson* v. *Wilmarth*, 13 Met. 416. The "protection" of the account, however, was the giving of security for its payment, and there was no express statement, or even an implied understanding upon the facts stated in the report, that suit would be brought if a guarantor was not promptly furnished.

While the contract, therefore, was not binding as an undertaking to pay the accrued account, the guaranty furthermore named no amount, and the burden of proof as the master correctly held rested on the plaintiff to offer competent evidence in support of the allegations of the second paragraph of the bill.* *Tenney* v. *Prince*, 4 Pick. 385. The master found, that the plaintiff failed to establish that Bernard E. Bloom was indebted to it at the date of the guaranty, and its exceptions to the report so far as argued relate to the exclusion of evidence, which it contends if admitted would have proved a sale and delivery of the goods.

The admissions of Bernard E. Bloom, in the absence of the defendant, that he had received goods to the amount named in

---

* The allegations of the second paragraph of the bill were as follows : " On or about September 24, 1908, the said B. E. Bloom defaulted payment of the account due the plaintiff, and on or about September 25, 1908, and the plaintiff duly demanded that the defendant Abraham Bloom pay the amount due from the said B. E. Bloom to the plaintiff, which, at that time, amounted to $1,993.42. The defendant Abraham Bloom, in response to said demand, stated that he was unable to pay the amount at that time, and asked for an extension, which the plaintiff refused to grant."

the account then presented to him were made after their alleged delivery, and, not having been communicated to the defendant, were correctly held to be inadmissible. *Evans* v. *Beattie*, 5 Esp. 26. *Dawes* v. *Shed*, 15 Mass. 6, 9. *McKim* v. *Blake*, 139 Mass. 593, 594.

The plaintiff also offered in evidence its books of account, kept in the usual course of business, as proof of the sale and delivery of the goods. *Costello* v. *Crowell*, 133 Mass. 352, 355. *Kaiser* v. *Alexander*, 144 Mass. 71, 78. If apparently there was no dispute as to whom credit was given, and the suppletory oath of the witness under whose supervision the books were kept was sufficient to prove the entries, the report states, that the entries were transcribed from temporary memoranda, and the clerks who made the memoranda had no knowledge of the sale and delivery, except upon information received from other clerks whose duties are not shown. The goods were sold and delivered by the plaintiff's servants, who were not called as witnesses, and, however elaborate or perfect the system may have been, neither the supervisor nor the entry clerks were possessed of such personal knowledge as would enable them to support the charges and prove delivery. *Kent* v. *Garvin*, 1 Gray, 148. *Gould* v. *Hartley*, 187 Mass. 561. The books of account not having been of themselves competent evidence, and the knowledge of the plaintiff's witnesses being derived solely from the entries appearing in them, the ruling of the master, that the books were not admissible, must be sustained. *Kent* v. *Garvin*, 1 Gray, 148. *Miller* v. *Shay*, 145 Mass. 162. *Gould* v. *Hartley*, 187 Mass. 561. *Allwright* v. *Skillings*, 188 Mass. 538, 541.

If through inadvertence the plaintiff neglected to offer evidence which would have supported its claim, it should have moved to recommit the report,* but having failed to

---

* The plaintiff in his brief had argued as follows : " Whether the above evidence [as to the book accounts] should be admitted or not, there are not sufficient facts before the court to grant the plaintiff's third prayer [which was that the equity of the defendant Bloom be sold and the debt to the plaintiff paid from the proceeds] in its present terms; but the case may be referred back to the master with instructions to determine what is due the plaintiff, or the first two prayers [that conveyance or foreclosure by Ziskend be enjoined and that the conveyance by the defendant Bloom be declared fraudulent] may be granted and the amount of liability left to be fixed by the common law suit now pending, and above referred to."

prove either a valid guaranty, or any liability of the defendant under it, the bill cannot be maintained.

*Decree affirmed.*