BUTCHERS SLAUGHTERING AND MELTING ASSOCIATION *vs.* CITY OF BOSTON.

Suffolk.     January 9, 10, 1913. — March 31, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Damages,* For property taken or damaged under statutory authority. *Statute,* Construction. *Evidence,* Public records.

The owner of a tract of land, bordering on an arm of the sea, who has constructed thereon a wharf, has no right at common law to recover damages if, by reason of a drawless bridge built under statutory authority between the property and the sea, navigation between his property and the sea is restricted.

The terms of a statute giving a right to recover damages for injury to property resulting from an exercise of the police power by the Commonwealth are not to be extended by implication in favor of the party on whom the right is bestowed.·

St. 1902, c. 464, § 1, giving to the owner "of wharf property used as such" on or before March 29, 1900, on the Charles River above the drawless bridge whose construction was authorized by Sts. 1898, c. 467; 1899, c. 180, and U. S. St. of March 29, 1900, c. 116, a right "to recover damages for any injury occasioned to such property by reason of interference with the access by water thereto, enjoyed" on March 29, 1900, "and theretofore, because of the construction of said bridge without a draw," does not give a right to recover damages so caused to an entire tract of fifty acres used on· or before March 29, 1900, in connection with two wharves included in the fifty acres, but only to recover the damage caused to so much of the property as customarily had been or then was in actual use for wharf purposes.

Comments in the nature of a ship's log, kept by a draw tender appointed by the superintendent of streets of Boston under an ordinance and in accordance with instructions of the superintendent which the ordinance required him to obey, are not a public record under R. L. c. 35, § 5.

Records kept by draw tenders of a bridge in Boston containing entries descriptive
of matters not known to the draw tenders but told to them by others, as well as
entries made a long time after the event recorded, are not admissible in evidence,
even if supported by the suppletory oaths of the draw tenders who made them.

PETITION, filed in the Superior Court on October 4, 1907, under
St. 1902, c. 464, for damages alleged to have been caused to the
petitioner by the construction without a draw of the bridge
across the Charles River between Boston and Cambridge author-
ized by Sts. 1898, c. 467; 1899, c. 180, and the U. S. St. of March
29, 1900, c. 116.

There was a trial before *Harris,* J., in the course of which the
petitioner offered the testimony of experts as to the amount of
the injury to the petitioner's wharf property, and it became neces-
sary to define what was meant by the phrase in St. 1902,
c. 464, § 1, "wharf property used as such." The petitioner con-
tended that the phrase was broad enough to include all of the
petitioner's tract of land, comprising about fifty acres, the value
of which was enhanced by the fact that its water front was actually
used for wharf purposes, and that, as the petitioner owned and used
the whole land as one tract, it might be found that the whole
tract was used in connection with the wharf and derived a value
from that fact, and, if so, the damage to the entire tract might
properly be taken into consideration. The presiding judge ruled,
subject to exceptions by the plaintiff, that the phrase meant "such
property as was actually used for wharf property, or wharf pur-
poses, which would include the structure and such part of the area
of the shore or around it as was used with the wharf distinctly for
wharf purposes, and not the rest of the area . . . such as custom-
arily has been used for that particular wharf structure," and
that the language did not, as a matter of law, refer to the entire
property.

It appeared that the Revised Ordinances of Boston of 1898, c. 38,
§ 3, gave to the superintendent of streets the care and manage-
ment of all bridges used as highways and the power of appointment
and removal of draw tenders for the bridges, whose duties were
defined as follows: "Each draw tender . . . shall take charge by
night and by day of the draw of which he is draw tender; shall
require from the person in charge of a vessel applying to pass
through the draw a true statement of the name, extreme width,

and draught of the vessel; shall determine the order in which vessels may pass through the draw, and may direct the placing of warping-lines, anchors, and cables, and the use of any warping-apparatus provided by the city; shall cause the draw to be opened for the passage of vessels when moving with the tide, and, in his discretion, when moving against the tide, if the wind is favorable or if the vessel is in tow; shall cause the draw to be closed with all possible expedition after a vessel has passed through, not permitting more than one vessel to pass through at one opening of the draw, except that, when the draw is open and the bridge is free from persons desiring to cross, he may, in his discretion, permit other vessels to pass through before causing the draw to be closed; he shall perform such additional duties as said superintendent may require."

It further appeared that the superintendent of streets required each draw tender to keep in a book a record showing the name and class of each vessel passing through the draw and the time of passing. The book also contained a "column for remarks . . . for the purpose of keeping a short condensed log, or record of any circumstances that may explain or account for the record, or that may concern the interests of the city, such as accidents; damages to the bridge by passing vessels; recovery of bodies of drowned persons, etc."

Other material facts are stated in the opinion.

The jury found for the respondent; and the petitioner alleged exceptions, which, after the resignation of *Harris*, J., were allowed by *Morton*, J.

*F. T. Hammond*, (*G. L. Mayberry* with him,) for the petitioner.

*J. P. Lyons*, for the respondent.

BRALEY, J. The petitioner's property, consisting of about fifty acres of land, fronts upon a navigable stream or arm of the sea where the extensive frontage has been improved by the construction of a retaining wall and of two wharves, one of which is occupied by the petitioner for the landing of its own materials and supplies, while the other is leased to a tenant who uses it for the storage and sale of coal. A bridge having been constructed without a draw and opened for public travel below the wharves, the petition is brought to recover damages for interference with transportation by the restriction which had been imposed on

access to the sea.  It appears that before the building of the bridge this portion of the stream was navigable by vessels with masts in which large quantities of coal had been shipped for the petitioner's use, but that since its completion, vessels of that type not being able to pass, the petitioner has been put to the expense of reshipment and sending the cargoes up the river by lighters. By reason of these conditions it claims that the use of the wharf not only has practically ceased but the entire property has been greatly depreciated in value for commercial purposes.

It is settled that at common law the petitioner is remediless. The interruption to free navigation affects the community generally, and even if the petitioner suffers to a greater degree because of an established business, yet the injury in kind does not differ from the injury to other riparian owners or members of the public who may have occasion to use the waterway.    *Home for Aged Women* v. *Commonwealth,* 202 Mass. 422, 427, 428.

Originally the construction of a bridge with a draw was authorized by the St. of 1898, c. 467.  But before the work had been begun the St. of 1899, c. 180, was passed, directing the building of a drawless bridge with the consent of the "United States government," as the stream at the place of location was navigable water. *Manchester* v. *Massachusetts,* 139 U. S. 240.  Permission having been granted by Act of Congress, of March 29, 1900, on condition, that the "State of Massachusetts, within a reasonable time after the completion of said bridge, by Legislative enactment, shall provide for adequate compensation to the owner or owners of wharf property now used as such on said river above said bridge, for damages, if any, sustained by said property by reason of interference with access by water to said property now and hitherto enjoyed, because of the construction of said bridge without a draw," the St. of 1902, c. 464,* was enacted, giving to the owners of wharf property located above the site the right to bring an action for damages within two years "after said bridge without a

---

* St. 1902, c. 464, § 1, provided in substance that "any owner or owners of wharf property used as such on or before" March 29, 1900, on the Charles River above the drawless bridge above described, should "be entitled to recover damages for any injury occasioned to such property by reason of interference with the access by water thereto, enjoyed on" March 29, 1900, "and theretofore, because of the construction of said bridge without a draw."

draw has been opened for public travel." It is to be noticed, however, that this right is not granted in general terms. It is carefully qualified, and while the present petition is properly brought, yet by the express words of the act the petitioner is entitled to damages only for any injury occasioned to "wharf property used as such."

A legislative grant, whether it be of property or of a right to damages for injury to property resulting from the exercise of the police power, as in the case at bar, is not to be extended by implication in favor of the grantee or the party on whom such right may be bestowed. *Commonwealth* v. *Boston Terminal Co,* 185 Mass. 281, 287, 288. *Crocker* v. *Champlin,* 202 Mass. 437, 442. By the purview of the statute conditions of user actually existing were alone recognized. It is not improbable, as counsel for the petitioner has argued, that the whole tract has been depreciated, even if the rear land may not have been so seriously affected as the portion nearest to the river or the wharves which extend into the water. The damages however are limited to that part which before the passage of the statute the petitioner had utilized by wharves actually in use when the bridge was built and whose business consequently might be seriously interfered with, if not destroyed, by the restriction imposed on open navigation. *Fitchburg Railroad* v. *Boston & Maine Railroad,* 3 Cush. 58. *Commonwealth* v. *Boston Terminal Co.* 185 Mass. 281. The construction given to the statute at the trial was therefore correct.

The remaining exceptions relate to the admission of evidence to which the petitioner excepted. The impairment of access, as already stated, constituted the sole element of damage and evidence undoubtedly was admissible showing the number and class of vessels with their cargoes which passed up the river before, as well as after, the erection of the bridge. Prior to its erection there were two bridges below the wharves with draws, in charge of draw tenders, who each kept a daily register of passing vessels and, after the method of keeping the registers had been shown by the respondent, these books, without any discrimination as to their contents, were admitted in evidence. A register kept by a draw tender, even if he is required by the revised ordinances of the city to make certain entries by way of comment in the nature of a ship's log, is not a public or official document within the meaning

of the R. L. c. 35, § 5, certified copies of which may be put in evidence. *Allen* v. *Kidd*, 197 Mass. 256, 259. *Kennedy* v. *Doyle*, 10 Allen, 161. *Bixby* v. *Franklin Ins. Co.* 8 Pick. 86, 89. The exceptions having provided that the books might be referred to, they were produced for our inspection at the argument. While many of the entries, which were made in the regular course of the draw tender's official duty and classified the vessels and tabulated the names and number, were admissible as the result of his personal observation, if supported by his suppletory oath, if he were living, other entries were merely descriptive of matters not known to the recorder, but which had been reported to him by substitute draw tenders. *Kennedy* v. *Doyle*, 10 Allen, 161. *Cashin* v. *New York, New Haven, & Hartford Railroad,* 185 Mass. 543, 546. *Atlas Shoe Co.* v. *Bloom*, 209 Mass. 563, 569. See St. of 1913, c. 288. It was further disclosed that in some instances statements were entered designating the consignee and the place of destination, with the character of the cargo, which were founded upon information furnished by the captain or members of the crew as a vessel was going through the draw, while some of these entries furthermore did not appear to have been made cotemporaneously with the event, but were entered long afterwards. The registers as thus made up did not prove themselves and should not have been indiscriminately admitted. *Allen* v. *Kidd*, 197 Mass. 256. *Delaney* v. *Framingham Gas, Fuel & Power Co.* 202 Mass. 359, 366, 367, 368. *Atlas Shoe Co.* v. *Bloom*, 209 Mass. 563, 569. *P. Garvan, Inc.* v. *New York Central & Hudson River Railroad,* 210 Mass. 275, 279. Wigmore on Ev. §§ 1639–1644. It being impossible to determine how far the incompetent evidence thus placed before the jury may have influenced their verdict, which was for the respondent, there must be a new trial.

*Exceptions sustained.*