## Frank E. Mansfield, Adm'r *vs.* T. E. Gushee.

## Knox.  Opinion July 11, 1921.

*Assumpsit on account annexed supported by affidavit, R. S., Chap. 87, Sec. 127, entitles plaintiff to judgment, unless rebutted.  Delivery or performance to be shown by best evidence obtainable.  Shopkeeper's books of account·must be identified by person making entries, if living, not insane, and within jurisdiction of court.  Books and suppletory oath not admissible until defendant's liability established, if delivery was to, or services rendered for, third parties.  If person making entries is the only person with knowledge of delivery, or performance, and is dead, insane, out of jurisdiction, or unable to testify, proof of handwriting, that books kept in regular course of business, such entries made in line of his duty or practice, and that they were made at or near time of delivery, or performance, may be sufficient proof of delivery or performance.  In actions between living parties, any person having personal knowledge is a competent witness as to delivery or performance.  The testimony of any party, in an action between a living party and the representative of a deceased person who made the entries, except in case of bulky articles, and services requiring assistance, if he has knowledge of the fact, whether the living party or not, is admissible on the question of delivery or performance, but if assistance was required in delivery, or performance, such assistant, if living, sane, and within jurisdiction of the court and able to testify, should be called. Statute of limitation can not be invoked unless there has been a period of at least six years, during which there are no items, either debit or credit.*

The plaintiff in an action of assumpsit on account annexed supported by the affidavit provided under Sec. 127, Chap. 87, of the R. S., is entitled to judgment unless rebutted by competent and sufficient evidence.

Shopkeeper's books of account are not admissible unless identified by the clerk or servant who made the entires, when it is not shown that such clerk or servant is dead, insane, or absent from the jurisdiction of the court.  Failure to carry out the amount of any item does not effect the competency of the entries if they are otherwise unobjectionable.

Where goods are delivered to, or services rendered for third parties, and there is a question about the defendant being chargeable, the book and suppletory oath are not admissible unless proof of the defendant's liability is furnished aliunde.

(a)	Except as qualified by rule (c), a book of original entries supported by a suppletory oath, but without an evidential statement as to delivery of the goods or performance of the services, is not sufficient evidence of delivery or performance.

(b)	The delivery of goods sold or performance of services rendered must be shown by the best evidence obtainable, and if the person making the entries has no personal knowledge of delivery or performance it must be proved by other competent evidence.

(c)	Where the person making the entries is the only person having knowledge of the delivery of the goods or the performance of the services, and he is dead, insane, or out of the jurisdiction of the court, or unable to attend court to give his testimony or give his deposition, upon proof of his handwriting and that the books were kept in the regular course of business, and that it was his duty or practice to make such entries at or near the time of delivery of goods or performance of services, the books themselves, if they otherwise appear to be regularly and fairly kept may be sufficient proof of delivery of goods or services performed.

(d)	In actions between living parties, any person having personal knowledge of the delivery of the goods or the performance of the services, whether he be a party, clerk, servant or agent, and even though the goods or the services be of such a nature as to require aid in their delivery or performance, is a competent witness upon the question of delivery or performance.

(e)	In actions between a living party and the representative of a deceased person, except in the case of bulky articles and services of such a nature as to require assistance in delivery or performance, the person making the entries, whether he be the living party or a clerk, servant or agent, if he has knowledge of the fact, may make oath to the delivery or the performance of the services.

(f)	In actions between a living party and a representative of a deceased person, if the entries were made by the living party and the goods were of such a bulky nature or the services rendered were of such a character as to make it impossible that delivery was made without aid or the services performed without assistance, then the person rendering such aid or such assistance, if living, sane, within the jurisdiction of the court, and able to attend and give testimony should be called under the best evidence rule.

8.	Under the provisions of R. S., Chap. 86, Sec. 90, the statute of limitations does not operate until there has been a period of at least six years during which there are no items, either debit or credit, and until such six year period expires the entire account is alive and suable.

On report.	An action of assumpsit on account annexed brought by plaintiff as the administrator of the estate of John C. Curtis, late of Camden, to recover $1,345.16, alleged to be due intestate at the time of his decease.	Defendant pleaded the general issue and the statute of limitations.	The case was referred to an auditor.	Plaintiff filed with the auditor the affidavit provided in R. S., Chap. 87, Sec. 127.	A report was made by the auditor, and by agreement of

the parties the case was reported to the Law Court to render such final judgment therein as the legal rights of the parties require. Judgment for plaintiff for $736.22 with interest thereon from date of writ.

Case is fully stated in the opinion.

*Charles T. Smalley,* for plaintiff.

*J. H. Montgomery,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, JJ.

PHILBROOK, J. The plaintiff, a resident of Boston, is the administrator of the goods and estate of J. C. Curtis, deceased, the intestate in his lifetime having been a shopkeeper in Camden, Maine. This action is brought to recover an alleged balance due for goods sold and delivered according to an account annexed which extended over a period of more than fifteen years. In the court below, an auditor was appointed to investigate accounts, examine books and vouchers, hear the testimony and state the account. After considering the evidence offered, and the legal controversies of the parties, the auditor made several alternative reports, the amounts varying according as certain legal contentions should or should not obtain, and thereupon the case was reported to this court with the stipulation that the Law Court, upon so much of the evidence as is legally admissible is to render such final judgment as the rights of the parties require.

*Plaintiff's Affidavit.* In support of the entire account, the plaintiff offered the affidavit provided by R. S., Chap. 87, Sec. 127 which provides that:

"In all actions brought on an itemized account annexed to the writ, the affidavit of the plaintiff, made before a notary public using a seal, that the account on which the action is brought is a true statement of the indebtedness existing between the parties to the suit, with all proper credits given, and that the prices or items charged therein are just and reasonable, shall be prima facie evidence of the truth of the statements made in such affidavit, and shall entitle the plaintiff to the judgment, unless rebutted by competent and sufficient evidence. When the plaintiff is a corporation, the affidavit may be made by its president, secretary or treasurer."

We have had occasion to discuss this statute recently in *Haswell* v. *Walker*, 117 Maine, 427, where the plaintiff was the living party, and the defendant was the representative of a deceased person, and we there held that such an affidavit of the living party could not be introduced in evidence because of other provisions of statute and common law excluding the testimony of such living party when the lips of his real opponent were sealed in death. But that is not the situation in the case at bar. Here the representative party seeks to testify by use of the affidavit provided by statute. The rule relating to testimony which may be given in suits by or against executors and administrators is not a bar to his right to speak. R. S., Chap. 87, Sec. 117, relating to evidence which is admissible or inadmissible in such suits provides that:

"In all cases in which an executor, administrator or other legal representative of a deceased person is a party, such party may testify to any facts admissible upon the rules of evidence, happening before the death of such person; and when such person so testifies, the adverse party is neither excluded nor excused from testifying in reference to such facts."

This leads to further examination of the evidential effect of the statute just quoted, which makes the affidavit of a plaintiff prima facie evidence in actions brought upon an itemized account annexed to the writ. Counsel for defendant declares it to be sweeping legislation and says that if full play is given to the language in which it is clothed it is capable of "iniquitous transformations and fantastic accomplishments." But more than fifty years ago, in *State* v. *Hurley*, 54 Maine, 562, our court declared that the power of the Legislature to change or modify existing rules of evidence, or to establish new ones, has been exercised too long to be a matter of doubt. In a still earlier case, *Berry* v. *Lisherness*, 50 Maine, 118, the court said that the Legislature may prescribe what evidence shall be received in courts and the effect of that evidence, and may restrict or enlarge such rules. In *Wade* v. *Foss*, 96 Maine, 230, this power was held to be such that even Congress could not interfere with it so far as its application to state courts was concerned, a doctrine which was affirmed in *Wade* v. *Curtis*, 96 Maine, 309. But in *State* v. *Intoxicating Liquors*, 80 Maine, 57, referring to a statute making the payment of a special tax as a retail liquor dealer prima facie evidence that the person paying such tax is a common seller of intoxicating liquor, the court said:

"We have many similar statutes, in some of which the words used are 'prima facie evidence,' and in others the words are 'presumptive evidence.' We cannot doubt that these phrases are intended to convey the same idea. . . . We are not aware that either of them has ever been construed as making it obligatory upon the jury to find a defendant guilty, whether they believe him to be so or not. They mean that such evidence is competent and sufficient to justify a jury in finding a defendant guilty, provided it does, in fact, satisfy them of his guilt beyond a reasonable doubt, and not otherwise. It would not be just to the members of the Legislature to suppose that, by any of these enactments, they intended to make it obligatory upon the jury to find a defendant guilty whether they believe him to be so or not."

In the last analysis, therefore, the probative effect of the evidence declared by statute to be prima facie, is the touch stone of the principle thus laid down, and this test is in harmony with text book writers and courts of highest authority. Starkie (1 Starkie on Ev., 479) says that prima facie evidence is that which raises such a degree of probability in its favor that it must prevail, if it be credited by the jury, unless rebutted or the contrary proved. In *Kelly* v. *Jackson*, 31 U. S., (6 Pet.) 622; 8 L. Ed., 523; a case frequently cited, the court held that:

"In a legal sense, prima facie evidence, in the absence of all controlling evidence or discrediting circumstances, becomes conclusive of the fact; that is, it should operate upon the minds of the jury as decisive, to found their verdict as to the fact."

It is therefore apparent why the probative effect of the affidavit above referred to must always be considered, even though it be declared by statute to be prima facie evidence. In the case at bar the affidavit is made by the plaintiff, because he is the only person authorized by statute to make it, except in case of a corporation, but there is nothing in the record to show that he, a resident of Boston, ever had the slightest opportunity to acquire any familiarity with the business of the decedent carried on at Camden. How then could he state, as of his personal knowledge, that the account annexed to the writ is "a true statement of the indebtedness existing between the parties to the suit, with all proper credits given, and that the prices or items charged therein are just and reasonable?" Such affidavit, we hold to be admissible under R. S., Chap. 87, Sec. 117, and its

offer and admission would entitle the defendant to testify under the limitations of said chapter and section; but in view of the conditions of this particular case we cannot concede that because of it, or the statute authorizing it, we, sitting with jury powers, under the stipulations accompanying the report, are obliged to find a full verdict for the plaintiff whether we believe him to be entitled to such verdict or not.     Before we leave this branch of the case it should be observed that the defendant laid much stress upon the order of procedure, claiming that the affidavit should have been presented before pleadings were filed.    This claim is not well founded.    If properly admissible it constitutes part of the evidence and should follow the pleadings.

*The suppletory oath.*    From the report of the auditor, it appears that the suppletory oath was made by J. T. Smyth, who had been in the employ of the decedent during the entire period of time covered by the account and whose duties had been general about the decedent's store.    He makes oath that the books offered "are the original books of account kept by the said J. C. Curtis in his lifetime; that part of the entries therein made were made by me at or near the time they purport to have been made, and that the others were written by clerks working with me at the time, and that the articles therein named were then delivered at the several times therein stated."

To the form of this oath, and the competency of the witness to testify under it in such form, the defendant seasonably objected.    If this oath appeared alone we should be forced to hold that it does not satisfy the rules of law relating to admission of shop books which require identification by a suppletory oath.

"It is well recognized that the mere production of books of account, without identification, is not sufficient to entitle them to admission. They must be accompanied by the oath of the party who made the entries, or by the oath of some person who knew the entires to be correct.    The general rule in this respect is that the entries in the book should be proved by the clerk or servant who made them, if he is alive and can be produced.    If the entries are not so verified by the person who made them, and it is not shown that such person is dead or absent from the country, they are inadmissible."    10 R. C. L., Page 1175, and cases there cited.    *Dunn* v. *Whitney*, 10 Maine, 9; *Tebbetts* v. *Haskins*, 16 Maine, 283; *Kent* v. *Garvin*, 1 Gray, 148; *Miller* v. *Shay*, 145 Mass., 162; *Gould* v. *Hartley*, 187 Mass., 561;

*Delaney* v. *Framingham Gas Co.*, 202 Mass., 366; *Atlas Shoe Co.* v. *Bloom*, 209 Mass., 563.

If it be shown that the clerk making the entry is dead, and his handwriting is proved, the books are admissible if, on inspection, they appear to have been kept fairly, and the entries to have been made as he had occasion to make them in the way of his agency, and relate to the matter in controversy between the parties. *Dow* v. *Sawyer*, 29 Maine, 117; Chamberlayne on Evidence, Vol. IV, Section 3069, and cases cited. The same rule that proof may be made of the handwriting of the entrant when deceased, is applied when he has become insane, is unable to attend court on account of illness, is beyond the jurisdiction of the court, or when for any cause it is impossible to procure his testimony. Chamberlayne, supra, Section 3070, and cases cited. *Mitchell* v. *Belknap*, 23 Maine, 475.

But we find from the report of the auditor, to which no objection upon this point appears, that the parties, by their counsel, agreed that the testimony of the other clerks of the decedent, in whose several handwritings the other charges were made, would be of like character as Mr. Smyth's testimony, under a like suppletory oath, and subject to the same objection; and that the auditor might give it like consideration. In other words it would appear that the suppletory oath in this case might be regarded as a composite oath, so to speak, made up from the identifying ability of all the clerks whether present or absent. If all the entries had been made by Smyth, and he had so testified, he would be the proper person to make the suppletory oath under the rules of law already referred to, and under this agreement of counsel as to absent clerks we think the form of the oath could not be successfully objected to.

The defendant, further objecting as to a portion if not all of the balance alleged to have been due, under the testimony before the auditor, raises four questions, the answers to which are essential in determining the rights of the parties.

Question 1. Are such accounts, with the suppletory oath, sufficient to charge the defendant with liability when no prices are carried out in the books.

Question 2. Are such accounts, with such oath, sufficient to charge the defendant with liability when delivery had been made to persons other than the defendant.

Question 3. Are such accounts, with such oath, sufficient to charge the defendant with liability when made directly to the defendant without any accompanying evidence as to delivery.

Question 4. What part of the account; if any, is affected by the Statute of Limitations.

Before attempting to answer these several questions we desire to make a few general observations. We must never lose sight of the fact that the admission of shop books in evidence, when supported by suppletory oath, far antedates the statute provisions regarding testimony admissible in suits by or against administrators. The rule goes back to the common law of former time when a party was incompetent to be a witness in his own behalf. The value and importance of the shop book rule in those early days was readily perceived. In many cases the book would be, not alone the only evidence, but would be the best evidence of sale and delivery of goods, or the rendition of services, which could be offered. As time passed the value of the rule was recognized by all courts in their gradual extension of its application beyond the narrow confines of the earlier days. This extension has given rise to the claim of inconsistency in judicial decisions. The limits of an opinion would prevent extended review of the development of these applications, or modifications of the early shop book rule, but a full and interesting discussion thereof may be found in Chamberlayne's Modern Law of Evidence, Vol. IV, beginning with Section 3054. Hence it is not our purpose or intention to provide rules applicable to all objections which may arise under the much discussed shop book rule. We shall only attempt to answer the four questions above stated, as raised in the case at bar.

Question 1. In *Witherell* v. *Swan*, 32 Maine, 247, a suit brought by a surveyor of lumber to recover for his services it was held that "the book must also show the amount of the claim." Aside from this case, decided in 1850 when the shop book rule was more rigid than now, we are not aware of any case in which our court has passed upon this question. On the other hand in a note to *Post* v. *Kennison*, 52, L. R. A. at Page 575, it is held that the fact, that in items for goods sold and delivered, or for labor performed, no prices are carried out, does not affect the competency of the entries if they are otherwise unobjectionable. The fair presumption is that when the sale was made, or the labor performed, no price was agreed upon; and hence its value may be established by proof independent of the books.

This note is based upon the authority of *Remick* v. *Rumery*, 69 N. H., 605; 45 Atl., 574; *Jones* v. *Orton*, 65 Wis., 9, 26 N. W., 172; *Steele* v. *Manufacturing Co.*, 4 Kulp, (Luzerne Legal Register), 414.    Upon the reasoning in these cases, especially in *Remick* v. *Rumery*, we think this is the correct rule, and so decide, although a contrary view is held in a very early New Jersey case, *Hagerman* v. *Case*, 4 N. J. L., 424, decided in 1817 when the rules regarding shopkeeper's books as evidence were much more restricted than now.

According to the report of the auditor, there appeared charges in the account annexed, where no prices had been carried out in the original book of entries, amounting to $184.74 and it does not appear that there was any proof independent of the books to show what those prices should have been.    This amount, therefore, we deduct from the total amount which the plaintiff seeks to recover.

Question 2.    This question has been answered in the negative in *Silver* v. *Worcester*, 72 Maine, 322, where it was held that in cases where the goods are delivered to third parties, or the services rendered at the call, or for the apparent benefit, of third parties, and the controversy between the litigants is not merely as to amount and quantity, but whether the defendant is chargeable, the book and suppletory oath are held not to be admissible, unless proof of the defendant's liability is furnished aliunde.    In *Mitchell* v. *Belknap*, supra, the same doctrine was announced in an action of assumpsit for goods sold and delivered where it was admitted by the plaintiffs that the defendant did not personally receive any of the articles nor was he present at the delivery thereof.    In *Soper et al* v. *Veazie*, 32 Maine, 122, where the plaintiff offered the book of accounts with the suppletory oath of one of the plaintiffs, William R. Soper, who testified that none of the articles charged were delivered to the defendant but to three other persons, the shop book was excluded.    But it was there held that the book would not have been objectionable on account of the articles therein charged not having been delivered to the defendant personally if there had been evidence tending to show that they were received by any one who was his agent authorized for that purpose.    It does not appear that there was any evidence presented to the auditor outside of the book of original entries which would tend to show that the portion of goods now under consideration were either delivered to the defendant or to any one who was authorized to receive them in his behalf.    The items in the account annexed

which would come in this class amount to $393.65 and this sum also is deducted from the amount for which the plaintiff brought suit. It might with propriety be added that the rule which we adopt, and which our court has heretofore adopted as shown by the citations just above given, is also the rule in other New England States; *Webster* v. *Clark*, 30 N. H., 245; *Somers* v. *Wright*, 114 Mass., 171; . *Churchill* v. *Hebden*, 32 R. I., 34, as well as by the great weight of authority in other jurisdictions.

Question 3. This involves the inquiry as to whether shop books, containing proper charges against proper parties, accompanied by the suppletory oath of the entrant, are sufficient to prove delivery of the goods, or performance of the services, for which the charges are made. Two of the leading text book writers on the Law of Evidence have answered the question with certain qualifications. Greenleaf on Evidence, Vol. 1, Section 117 says that:

"In such cases the books are held admissible as evidence of the delivery of the goods therein charged, where the nature of the subject is such as not to render better evidence attainable."

Chamberlayne on the Modern Law of Evidence, Vol. IV, Section 3113, says:

"The relevancy or regularity being established, books of account are admissible to prove a charge for merchandise sold and delivered. Not only are such books prima facie evidence of the sale and delivery of goods, but also of the prices for which the same were sold."

This statement is supported by a very large number of authorities, but in Section 3114 of the same work, the author further says:

"An entry in a shop book may be inadmissible to show a sale and delivery where the article was so bulky that it would be impossible to have delivered it without some aid. In such a case, the book is not regarded as what is called the best evidence of the fact to be proved. This may be better established by the testimony of those who assisted in the delivery when their presence can be procured."

The rule seems to be well established in the Massachusetts Courts that the shop books accompanied by the oath of the entrant are not evidence of delivery where the one actually making delivery is a person other than the entrant, holding that the knowledge of the entrant is hearsay evidence obtained from the one who actually delivered the goods and that the oath of the latter is necessary to prove delivery. *Atlas Shoe Co.* v. *Bloom*, 209 Mass., 563; *Kent* v.

*Garvin,* 1 Gray, 148; *Gould* v. *Hartley,* 187 Mass., 561; *Miller* v. *Shay,* 145 Mass., 162.

Because it is claimed that there is lack of harmony in the decisions of our own court touching this question of proof of delivery by shop books and suppletory oath, we have examined with some care all the reported cases in this State in which reference has been made to this question. We trust that in the discussion immediately following it will be constantly borne in mind that we are considering only the question of proof of delivery of goods sold or services performed, where the shop book rule with suppletory oath is under consideration.

The earliest case considered by our court is *Dunn* v. *Whitney,* 10 Maine, 9. The case was decided in 1833, which was at a time when, under the common law, a party could not be a witness but the ancient shop book rule was in force as an exception to this rule of disability of a party to testify. The court used the following language from the case just above referred to:

"The general principle of the common law, that the best proof should be produced which the nature of the transaction will admit of, is still adhered to in all cases with unyielding pertinacity. But it was early settled that the admission of tradesmen's books, to a certain extent, and fortified by the oath of the party by whom they were kept was no violation of this salutary principle. When the tradesman had a clerk who delivered the articles, his testimony was the best evidence and, if obtainable, could not be dispensed with. In such a case the oath of a party could under no circumstances be received. In England, therefore, where trade has for centuries been carried on mostly if not entirely in large establishments where disinterested evidence relating to the ordinary business of the tradesman may be easily obtained through the clerks and others by him employed, the oath of the party in support of his books is never admitted. It is not considered the best evidence which can be produced. But in a country where every tradesman is his own clerk and from his limited business and profits must necessarily be so, as was generally the case in the early settlements of this country and still continues to be the case in the new settlements, the sale and delivery of the usual articles of merchandise cannot ordinarily be proved in any other manner than by the books and suppletory oath of the party. Such evidence is considered the best in the power of the party to produce, or which the nature of the case will admit of, and

to require more would have a ruinous effect upon his business. Still, however, as the evidence is from the interested party himself and repugnant to the general rules of evidence, it is to be admitted under every possible guard and security, and is never to be received in support of such demands as in their nature afford a presumption that better evidence exists. Whenever it does appear from the nature of the transaction or from disclosures in the case, that other evidence is obtainable the law requires its production. If the articles were delivered by a clerk, by him must the fact be proved. If delivered to an agent or servant, he is the proper witness. And if sold and delivered in large quantities the presumption is that persons other than the party making the sale would be likely to have knowledge of it and, therefore, the books of the seller are inadmissible."

In *Leighton* v. *Manson*, 14 Maine, 208, after discussing with approval *Dunn* v. *Whitney*, supra, the court remarked:

"The necessity, then, for the oath of the party in aid of his books seems to exist only where he delivered the articles himself. If the articles are of such bulk or weight that the person making the entry could not reasonably be supposed to have delivered them without assistance, the presumption would arise that better evidence of delivery might be produced; and the reason for admitting his own testimony would cease. Perhaps no better rule for the guidance of judicial tribunals will be found than for the Judge to decide upon inspection of the items of the account, whether the articles charged could ordinarily have been delivered without the assistance of other persons, and admit or reject the testimony according as he may conclude that the articles could or could not have been so delivered."

In *Mitchell* v. *Belknap*, supra when discussing *Dunn* v. *Whitney*, supra, the court differs from the latter case in holding that it is not necessary to summon as a witness, the servant or agent of the purchaser of the goods to prove delivery and we think this is the better doctrine. In this case also the court says that in this State the books and oath of the party have been admitted, on appearing to be regularly kept, to prove the delivery of goods to the other party, notwithstanding he may have had a clerk in his shop or others may have been present at the time of the delivery. But the learned Justice making this statement did not cite cases or authorities in support of his declaration. In *Dwinel* v. *Pottle*, 31 Maine, 167, the plaintiff relied solely upon a charge made upon his shop book and his supple-

tory oath. As he did not, however, swear to a delivery of the articles charged by him the court held that he did not present a case in which his book was competent evidence to be submitted to a jury. In *Codman* v. *Caldwell,* 31 Maine, 560, where a party produced his book with suppletory oath, the court distinctly said that the plaintiff may testify to the delivery of goods. In *Soper* v. *Veazie,* supra, the plaintiff in addition to his suppletory oath was permitted to testify as to delivery, although as we have seen, this was one of the cases where delivery to a person other than the defendant without knowledge or consent of the defendant was insufficient to charge the latter with liability. In *Furlong* v. *Hysom,* 35 Maine, 332, the court used this language:

"In the absence of other testimony, the shop books of the plaintiff with his suppletory oath were competent evidence for the consideration of the jury to prove the sale and delivery of the goods."

This is stating the proposition somewhat differently than it had been stated by our court up to that time and perhaps might seem a somewhat conflicting statement, but the expression "in the absence of other testimony" may have been intended to relate to the "better evidence rule" referred to in previous cases. In *Towle* v. *Blake,* 38 Maine, 96, Mr. Justice Cutting said that it was unnecessary to narrate the rise, progress, application and extent of the rule of law admitting account books, with suppletory oath, as competent evidence, and quaintly added "Curiosity can be abundantly gratified upon that point on examining the following cases." He then gave a fairly representative list of cases decided in the New England Courts up to that time. The learned Justice was evidently not in sympathy with the growing leniency of the courts toward the shop book rule declaring it to be one of a dangerous nature and which should be limited as the necessity diminished. He summarizes the rule in these words:

"It should appear that the book is the original book of entries and the charges made therein at or near the time of the delivery of the articles or performance of the services, and of such a nature that they could not ordinarily be proved by other evidence."

Soon after this opinion was handed down, the Legislature by Chapter 266, Public Laws 1856, enabled parties to suits and other interested persons to become witnesses, a radical departure from common law rules of evidence, but care was taken to provide that

the act should not apply to suits by or against executors or administrators. In other words, the plaintiff or defendant being a living party and the other party a representative of a dead person, the living one was still excluded from testifying generally but the ancient shop book rule still applied to his testimony. Hence we find in *Kelton* v. *Hill*, 58 Maine, 116, a suit brought by an administrator against a living person, the court remarked that as the defendants could not testify generally, their testimony must be restricted to what could be proved by their books and suppletory oath.

An oft-cited case is *Silver* v. *Worcester*, 72 Maine, 322. This was a suit brought by a living person against the representative of a deceased person. The learned Justice who delivered the opinion in that case discussed the ancient shop book rule as affected by the rule which disqualified parties in suits by or against representatives of deceased persons and, referring to limitations of testimony in such cases, declared that in certain directions those limitations are distinct and clearly established, while in others there is a border land of debatable questions which is constantly enlarging, notwithstanding the repeated declarations of courts that such enlargements should not be extended unless in cases of necessity and are not to be favored. He concedes that there are some apparent discrepancies in the decisions of the courts touching these matters but holds that they have seldom gone beyond the requirements of necessity.

We believe that we have thus brought to attention all the cases to be found in our reports bearing upon the question of proof of delivery of goods sold, or performance or services rendered, as charged in shop keeper's books which are supported by the suppletory oath of the party presenting the books or of someone in his behalf; and conclude that except as hereinafter stated, in addition to his books, evidence of delivery of goods or of services performed must always be furnished; that a party to a suit, even before the removal of the disqualification of parties as witnesses, has always been permitted to testify as to delivery of goods or the performance of services when he kept the books and was cognizant of the facts, except in the case of bulky articles or where the services of necessity would require assistance in the performance; and that he was permitted to give such evidence as a part of the suppletory oath or as a further modification of the common law rule disqualifying parties as witnesses. This last question is now important only in actions between living parties

and the representatives of deceased persons.   If the action is between living parties, either party may now testify in chief to all the facts within his knowledge and relevant to the issue.

Without attempting to explain or harmonize some apparent differences in the decided cases, the court is of the opinion that the following rules should now obtain in our jurisdiction as to proof of delivery or of services performed in connection with the use of shop books as evidence.

(a)   Except as qualified by rule (c) a book of original entries supported by a suppletory oath, but without an evidential statement as to delivery of the goods or performance of the services, is not sufficient evidence of delivery or performance.

(b)   The delivery of goods sold or performance of services rendered must be shown by the best evidence obtainable, and if the person making the entries has no personal knowledge of delivery or performance it must be proved by other competent evidence.

(c)   Where the person making the entries is the only person having knowledge of the delivery of the goods or the performance of the services, and he is dead, insane, or out of the jurisdiction of the court, or unable to attend court to give his testimony or give his deposition, upon proof of his handwriting and that the books were kept in the regular course of business, and that it was his duty or practice to make such entries at or near the time of delivery of goods or performance of services, the books themselves, if they otherwise appear to be regularly and fairly kept may be sufficient proof of delivery of goods or services performed.

(d)   In actions between living parties, any person having personal knowledge of the delivery of the goods or the performance of the services, whether he be a party, clerk, servant or agent, and even though the goods or the services be of such a nature as to require aid in their delivery or performance, is a competent witness upon the question of delivery or performance.

(e)   In actions between a living party and the representative of a deceased person, except in the case of bulky articles and services of such a nature as to require assistance in delivery or performance, the person making the entries, whether he be the living party or a clerk, servant or agent, if he has knowledge of the fact, may make oath to the delivery or the performance of the services.

(f) In actions between a living party and a representative of a deceased person, if the entries were made by the living party and the goods were of such a bulky nature or the services rendered were of such a character as to make it impossible that delivery was made without aid or the services performed without assistance, then the person rendering such aid or such assistance, if living, sane, within the jurisdiction of the court, and able to attend and give testimony should be called under the best evidence rule.

Question 4. This relates to the effect of the statute of limitations upon the rights of the parties. The last item proved in the account was under date of July 17, 1917, and the action was begun October 18, 1918. The defendant claims that no recovery can be had for any items charged on any date earlier than July 17, 1911, that being six years prior to the last item proved in the account. Under the provisions of R. S., Chap. 86, Sec. 90, and the interpretation of that statute by this court in *Rogers* v. *Davis*, 103 Maine, 405, this contention cannot prevail. Referring to the revision of the statutes in 1857, Chap. 81, Sec. 99, we find it provided that:

"In all actions of debt or assumpsit to recover the balance due upon a mutual and open account current, the cause of action shall be deemed to accrue at the time of the last item proved in such account."

In 1867, by the Public Laws of that year, Chapter 117, the Legislature passed "An Act definining a mutual and open account current" in which it amended the statute just cited by adding the following words:

"And it shall be deemed a mutual and open account current when there have been mutual dealings between the parties, the items of which are unsettled, whether kept or proved by one party or both."

The statute in this amended form, with slight verbal changes, has been retained through all subsequent revisions of the statute, and appears in the latest revision, that of 1916, Chap. 86, Sec. 90.

In *Rogers* v. *Davis*, supra, the court expounded this statute in the following words:

"The statute begins to run with the last item of the account, and it makes no difference whether it is a debit or credit item, or which party kept or proved it, or whether it appears in the plaintiff's credits or in the defendant's debits, if only it be on account of mutual dealings between the parties which have not been settled. It is no longer a question of the recognition of the account and of the renewal of the

promise to pay it by making a partial payment on account of
it. . . . The statute was evidently intended to preserve the
right of action upon a mutual unsettled account for six years after
the last item, no matter how far back the account commenced.
Until there has been a period of at least six years during which there
are no items, either debit or credit, the account is alive and suable."

It appears from the auditor's report that there were some items in
the account annexed which appear on the books as "Bal. on Mdse."
and "Mdse" amounting to sixteen dollars and seventy-four cents
($16.74), which he very properly disallowed, and which we disallow.

Finally, by the application of the doctrines herein declared, and
from examination of the auditor's findings, we determine the amount
due from defendant to plaintiff to be as follows:

Deducting credits allowed by the auditor, $492.85 and
the sum of $16.74 on account of "Mdse." charge, we have
a balance of. ....... .. .... ........... ........ ...... . ................. ....... .   $1,314.61

Deducting from this balance the sum of $184.74, ex-
plained in answer to Question 1, and the sum of $393.65,
explained in answer to Question 2............................ ............   578.39

Leaves a balance of........ . .....................................   $736.22

and for this sum, together with interest thereon from date of the
writ, the plaintiff shall take judgment.