FIREMAN'S FUND INSURANCE COMPANY v.
FORT SMITH PIZZA COMPANY

5-4872                                    442 S.W. 2d 238

Opinion Delivered June 9, 1969
[Rehearing denied July 14, 1969.]

*Barber, Henry, Thurman, McCaskill & Amsler* for appellant.

*H. B. Stubblefield* for appellee

J. FRED JONES, Justice.  This is an appeal by Fireman's Fund Insurance Company from an adverse decision of the Pulaski County Circuit Court, Second Division, in a suit by Fort Smith Pizza Company on an insurance policy.

The appellant insurance company entered into a contract with the appellee pizza company, agreeing to insure the appellee with a coverage of $2,500 against loss of money and securities by the actual destruction, disappearance or wrongful abstraction thereof within the premises or within any banking premises or similar recognized places of safe deposit.

The appellee alleged in its complaint:

"That from July 14, 1967, to July 20, 1967, inclusive, during which time said insurance policy was in full force and effect, plaintiff suffered a loss of money and securities in the amount of $1,757.57 (being $388.07 on 7/14/67; $395.91 on 7/15/67; $145.52 on 7/16/67; $191.68 on 7/17/67; $211.60 on 7/18/67; $181.14 on 7/19/67 and $243.65 on 7/20/67) by actual destruction, disappearance or wrongful abstraction thereof for which loss defendant is liable to plaintiff under the provisions and within the meaning of the aforementioned insurance policy."

A jury was waived and the case was tried before the trial judge sitting as a jury. Judgment was rendered for the full amount sued for, together with statutory penalty and attorney's fee, and on appeal to this court the appellant relies upon the following point for reversal:

"The trial court should have found for the defendant, as a matter of law."

We agree with the appellant. The appellee attempted to prove that the separate deposits listed in its complaint, totaling $1,757.57, mysteriously disappeared from the night depository of the Merchants National Bank of Fort Smith after being deposited there. We find no substantial evidence in the record before us that any part of said amount ever reached the bank.

The record reflects that the usual procedure followed at the three pizza parlor locations was as follows: At each of the pizza parlors six hundred dollars, one hundred of which was in change, was kept on the premises at all times for operating expenses. At the close of each business day the local manager would count the daily receipts, put back the $600 for the next day's operation, and make out bank deposit slips in triplicate for the balance of the receipts to be deposited in the bank. A daily report form would then be made out showing the amount and kind of merchandise sold, the amount received in each category, the total receipts, and the total cash to bank. A copy of this report, together with a copy of the bank deposit slip was mailed each day to the president of the appellee in Little Rock. The manager of the particular parlor would then make the actual deposits in the bank. More than one day's receipts would sometimes be deposited at the same time. The usual procedure was to make the bank deposits at odd times for security reasons and usually by physical deposit in the drive-in night depository. Under this procedure no receipt was obtained from the bank when the deposit was made, but a receipted copy of the deposit slip would be returned by the bank when the deposit was credited to the account. These receipted deposit slips would bear the date they were prepared, and the date the amount was credited to the account but they would not bear the date they were placed in the night depository. Only the retained copy of the deposit slip, made out by the local manager, was mailed to the Little Rock office with the daily report.

Mr. George Batchelor, a certified public accountant, testified that he was doing the accounting work for the appellee during the time of the alleged loss. He identified daily reports with copy of deposit slips attached as having been sent in by the manager of the Fort Smith Parlor and testified that all the managers followed the same procedure. Mr. Batchelor testified that the amounts shown on the reports and copy of deposit slips

made out and sent in by Mr. Blaloch, the local manager at Fort Smith, were never credited by the bank to appellee's account.

Mr. John Bauman testified that he was general manager of three Shakey's Pizza Parlors owned by Mr. Murry, including the one at Fort Smith. He testified that a Mr. Blaloch was the local manager at Fort Smith and that he went to Fort Smith on Saturday, July 22 and discharged Mr. Blaloch. He testified that he went with Mr. Blaloch to the bank and they deposited the previous day's receipts in the night depository; that the deposit slips for this deposit were dated July 21, and that this deposit was made on the 22nd and was credited to the account of the appellee the following Monday, July 24.

Mr. Ike Murry, majority stockholder and president of the appellee, testified, in part, as follows:

"Q. And is the same form of those daily reports that are introduced as Exhibits 8 through 14 required daily from each of your operations?

A. That's right. Same form.

Q. And including your operation there at Fort Smith?

A. Right.

Q. Nor only during this period but during each day's operation?

A. That's right. Each day we pick up a daily report from the three Fort Smith. I mean the three pizza parlors and attach to each one of them *a deposit slip which has been executed by the manager indicating the money has been sent to the bank or that it will be sent to the bank.*

\* \* \*

Q. And are those daily reports in your regular course of business up there at Fort Smith?

A. That's right.

Q. And the information shown thereon, quote— total cash to bank—end quote, is shown on each one of those daily reports?

A. That's right.

Q. And I believe that's required of your manager of each one of your operations?

A. That's right." (Emphasis supplied.)

On cross-examination Mr. Murry testified that the local manager of the business in Fort Smith would mail the daily reports, together with copy of deposit slip to him in Little Rock. He also testified as to reasons for discharging the Fort Smith manager, but further recitation of the testimony would add nothing but volume to this opinion.

The only person who knew what went with the money indicated on the daily reports and copies of the deposit slips made out and mailed from Fort Smith to Little Rock by Mr. Blaloch, was Mr. Blaloch himself. He was the one who made out the reports indicating that the money had been or would be deposited in the bank and he was the one charged with the responsibility of depositing the money in the bank. Mr. Blaloch had been discharged and had gone to Tennessee before it was ever discovered that the amounts he reported had been or would be deposited in the bank were never credited to the appellee's account.

The appellee relied entirely on Ark. Stat. Ann. § 28-928 (Repl. 1962) which provides as follows:

"In any court of record of the State, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or rec-

ord of any act, transaction, occurrence, or event shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.''

Mr. Blaloch did not testify in this case and his daily reports made out and mailed to his superiors in the regular course of business indicating the amount of money he collected and had or would deposit in the bank, certainly are no evidence at all that he ever reached the bank with the money he indicated he had or would deposit. It is clear from the evidence, including the daily records and deposit slips, that the daily records or reports were made out at the end of each day's business reflected therein. The deposit slips were dated the same day the records were dated and obviously the deposit slips were made out before the deposit was actually made. The most these business records of the appellee could show is the amount of money on hand which the appellee's manager indicated that he *would deposit in* the bank.

It appearing from the record that the facts in this case might be more fully developed on retrial, the judgment of the trial court is reversed and this cause remanded for that purpose.

BYRD and HOLT, JJ., dissent.

CONLEY BYRD, Justice. As I read the majority opinion I understand the facts to be that the manager Blaylock in the regular course of his daily business at the end of each day made out a deposit slip showing the amount

of money deposited or to be deposited in the bank account and also a report which he mailed to the home office in Little Rock together with the deposit slips. I also understand that the deposits were made as soon after the close of the business day as security would permit. Under these circumstances it appears to me that the majority is doing violence to the Business Records statute or "shopbook rule."

Even under the common law shopbook rule, the business records here introduced would have been sufficient evidence of delivery of the deposits to the night depository. See *Mansfield* v. *Gushee,* 120 Maine 333, 347, 114 A. 296 (1921). It was there held:

> "Where the person making the entries is the only person having knowledge of the delivery of the goods or the performance of the services, and he is dead, insane, or out of the jurisdiction of the court, or unable to attend court to give his testimony or give his deposition, upon proof of his handwriting and that the books were kept in the regular course of business, and that it was his duty or practice to make such entries at or near the time of delivery of goods or performance of services, the books themselves, if they otherwise appear to be regularly and fairly kept may be sufficient proof of delivery of goods or services performed."

In 30 Am. Jur. 2d *Evidence* § 950, the stated purpose of the Business Record Statutes such as Ark. Stat. Ann. § 28-928 (Repl. 1962) is as follows:

> "The Model Act for Proof of Business Transactions, which has been adopted in a few states and by Congress, permits a writing or record made in the regular course of business to be received in evidence without the necessity of calling as witnesses all the persons who had any part in making it. In other words, the act does away with technical rulings which excluded records ordinarily used in business

transactions when not formally identified by the makers."

In *Scowcroft & Sons Co. v. Roselle*, 77 Idaho 142, 289 P. 2d 621, 55 A.L.R. 2d 1 (1955), there was involved an action by a wholesaler to recover for merchandise shipped and delivered to a store operated by the retailer's agent. Under a statute similar to ours the court held:

"The records of account of respondent, introduced in evidence, constitute sufficient evidence to sustain a finding by the jury that respondent had sold and delivered to the Summitt Supply Company the merchandise therein listed for the price therein set out, and a finding as to the payments made upon the account and the balance due thereon."

In our own case of *Harrison v. State Farm Mutual Insurance Co.*, 230 Ark. 630, 326 S.W. 2d 803 (1959), the question involved was whether State Farm had cancelled an insurance policy by mailing a notice of cancellation addressed to Harrison. We there held that the business records of State Farm were evidence under Ark. Stat. Ann. § 28-928 of the mailing of the notice of cancellation.

The record here shows that the whereabouts of manager Blaylock was unknown to appellee at the time of trial. Under these circumstances it appears to me that the records kept by Blaylock showing the deposits that he either made or was to make within a reasonable time of the making of the business record entry are sufficient either under common law or the statute to show delivery of the deposits to the night depository.

Since business records of State Farm in the *Harrison* case constituted evidence to show that State Farm had properly addressed, stamped and deposited a letter of cancellation in the post office, I am at a loss to under-

stand why the records here are not sufficient to show a placing of the daily deposit in a bank's night depository..

Therefore, I dissent.

HOLT, J., joins in this dissent.